617 A.2d 696

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John Thomas SPIEWAK, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued March 12, 1992.

Decided Nov. 10, 1992.

3

John Rogers Carroll, Philadelphia, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Sandra Preuhs, Asst. Dist. Atty., Edward Marcus Clark, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

Appellant, John Spiewak, was charged on December 12, 1987, with having engaged in involuntary deviate sexual intercourse with his fifteen year old stepdaughter, J.K., between

June and December, 1983. 18 Pa.C.S. § 3123(5).[1] After a jury trial, Appellant was found guilty of one count and sentenced to a term of imprisonment of five to ten years. Post-trial motions were filed and denied by the trial court. Superior Court affirmed the judgment of sentence in a memorandum opinion. 400 Pa.Super. 625, 576 A.2d 1139.

We granted allowance of appeal to address two issues: whether the trial court erred in refusing to permit Appellant to attack the victim's testimony on the grounds that the Rape Shield Law, 18 Pa.C.S. § 3104, barred reference to her prior sworn testimony concerning similar conduct; and whether the court erred in refusing to grant a mistrial on the grounds of prosecutorial misconduct.[2]

The victim testified at trial that one evening during the month of June, 1983, she joined the Appellant in the den of the family residence to watch television while her mother was asleep upstairs. She testified that it was a hot summer evening and that she was wearing only a tee shirt and underpants. According to J.K.'s testimony, the Appellant offered her cocaine and she accepted because she was curious. She testified that she agreed to let Appellant lick cocaine from her breasts and that Appellant subsequently performed oral sex on her. It was J.K.'s testimony that this conduct occurred repeatedly during June and July of 1983. J.K. further testified that she resumed sexual contact with Appellant, including vaginal intercourse, in June of 1984, when she returned to the former family residence to help Appellant with renovations after he and her mother had separated.

Appellant, then a Pennsylvania State Police officer, admitted that he had sexual relations with his stepdaughter, but

---

1. § 3123. Involuntary deviate sexual intercourse

 A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:

 . . . . .

 (5) who is less than 16 years of age.

2. Appellant also challenges the constitutionality of the criminal statute under which he was convicted. Because Appellant did not raise this claim in post-verdict motions, we find that it is waived. Pa.R.A.P. 302(a).

contended that the sole incident occurred after her sixteenth birthday, which was February 14, 1984. He testified that after he and his wife had separated in April, 1984, J.K. returned to help him renovate the house that had been the family's residence. Appellant testified that during this period of time, when they were alone in the house one evening, J.K. came down to the den wearing only a tee shirt and under-pants. He requested that she "put something on", but instead she initiated a conversation about sex. It was also Appellant's testimony that they ultimately engaged in both oral and vaginal intercourse. Appellant further testified that drugs were never involved. The Appellant concluded his testimony by describing two subsequent opportunities for sexual contact which did not culminate in intercourse.

The credibility of the victim was the critical issue in the present case. The central issue in dispute was whether the incident of oral intercourse for which Appellant was convicted occurred at a date earlier than February 14, 1984, J.K.'s sixteenth birthday. In January, 1986, J.K. had testified at a custody proceeding regarding her stepbrother that she had been seduced by an older man who was a friend of her stepfather's. Moreover, she had testified that this encounter, which occurred while she was under the age of sixteen, involved not only oral intercourse but also the use of cocaine. The similarity between this incident and the incident she described during her testimony in the present case is readily apparent.

During the trial, Appellant's counsel sought to cross-examine J.K. on her prior sworn testimony concerning her conduct with her stepfather's friend. Counsel requested a bench conference to determine whether the following question was permissible: "Isn't it true that in that other proceeding you testified under oath that your father's best friend seduced you through the use of cocaine and you had sex with him?" R. 212a. Appellant renewed an earlier proffer that the purpose of this testimony was not to prove the complainant was promiscuous, but to impeach her credibility. Relying on his previous determination, the judge ruled that the Rape Shield

Law absolutely precluded Appellant from pursuing this line of cross-examination.[3]

J.K. also testified on direct examination that in January of 1984, she told Karl Hils, a boy she had been dating, that she had been involved with an older man and had engaged in oral sex with him. This conversation was memorialized with the date, January 27, 1984, in a piece of graffiti written on the ceiling of the dressing room of Central Catholic High School.

[DISTRICT ATTORNEY]: [J.K.], did you speak to other individuals about what had happened?

A. Yes, I did.

[DISTRICT ATTORNEY]: Do you know an individual by the name of Karl Hils?

A. Yes, I do.

[DISTRICT ATTORNEY]: How do you know Karl Hils?

A. I met him at the end of my freshman year of high school. He was my boyfriend at the time; and, um, I didn't see him at all the summer of 1983 but we resumed our relationship, um, in the fall of 1983.

[DISTRICT ATTORNEY]: Did you ever tell Karl about what was going on?

A. Um, in January of 1984, I mentioned something to him that I have been involved with an older man; but I didn't give him the name. I didn't disclose who it was until 1986. Um, I had been going to see a counselor; and um, he had been taking me to my appointments; and after one particular appointment, I came out and I was very upset about it and I ended up telling him just about everything.

[DISTRICT ATTORNEY]: Going back to the time in 1984, [J.K.] when you told him; where were you when told him?

---

**3.** THE Court: Yes. Since that issue was first raised, I reviewed the Rape Shield Law. I think its applicable. The law seems to be almost absolute. It doesn't say that evidence of prior promiscuity, sexual relations is generally inadmissible but can be, you know, for to establish certain things. It just says you cannot bring in evidence of a rape victim's prior sexual activity period. I'm going to sustain the objection. R. 212a.

A. We had, um, broken into the dressing rooms at his high school; and we were just inside. It was, um, we had gone out for the evening. We were supposed to be on a date; and we ended up going there and we just ended up telling each other a lot of things about ourselves; and I had just told him that I had been involved with another man and that I had oral sex with him.

R. 170a.

On redirect examination, the Commonwealth elicited similar testimony. In light of this testimony, counsel renewed his earlier motion to introduce evidence that the complainant had previously accused another older man of sexual misconduct, arguing that Appellant was entitled to demonstrate that the "older man" referred to in the witness's 1984 statement to Hils was not the Appellant but rather the person referred to in her testimony at the 1986 custody proceeding. R. 242a. The purpose of this testimony was to show an alternative account of J.K.'s statement to Hils that she had experienced oral sex with an older man. Again, the trial court refused this line of inquiry because of the Rape Shield Law.

 The issue presented for our review is whether the trial court erred in determining that the Rape Shield Law bars admission of prior testimony concerning similar conduct when such testimony is being introduced for the limited purpose of attacking the victim's prior sworn testimony.[4]

Appellant argues that the evidence he wished to present was not barred by the Rape Shield Law. He also claims that applying the Rape Shield Law in this case violated his consti-

4. Our standard of review on a trial court's ruling on the admissibility of evidence is limited. Evidentiary questions are left to the sound discretion of the trial court, and this Court will reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 204, 495 A.2d 176, 178 (1985). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. *Commonwealth v. Lane*, 492 Pa. 544, 549, 424 A.2d 1325, 1328 (1981).

tutional rights of confrontation and cross-examination. We agree.

Pennsylvania's Rape Shield law provides, in pertinent part, that "[e]vidence of specific instances of the alleged victim's past sexual conduct, ... shall not be admissible in prosecutions under [Chapter 31]....", relating to sexual offenses. 18 Pa.C.S. § 3104(a).[5]

Appellant asserts that evidence of the prior similar occurrence was not offered here to show any general moral turpitude or defect of the complainant, but because it raised doubts about the truthfulness, the accuracy, and the weight to be afforded her testimony on the present charges.

In *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983), we held that the protection afforded to the complainant by the Rape Shield Law does not act to prohibit relevant evidence which may exculpate a defendant of the crime with which he is charged. Such evidence should be admitted subject to the usual rules of admissibility, in particular the balancing of probative value against prejudicial effect. Admitting such evidence for the limited purpose of denying the act charged properly balances the goals of the Rape Shield Law with an accused's fundamental right to present in defense his own version of the facts. 503 Pa. at 611, 470 A.2d at 84.

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Davis*, 381 Pa.Super. 483, 491, 554 A.2d 104, 108 (1989) *appeal denied*, 524 Pa. 617, 571 A.2d 380 (1989). Clearly, the excluded evidence comports with this standard. Appellant's defense was that although sexual conduct had occurred, the conduct did not occur until the complainant was sixteen years old. Evidence had been introduced at trial that the

5. The only express exception to this broad prohibition is where consent is an issue and the sexual conduct was with the defendant. In this case, consent is not at issue, and the conduct sought to be introduced involves a third person, not defendant-appellant. Consequently, this exception is clearly inapplicable.

complainant had told her boyfriend on January 27, 1984, that she had experienced oral intercourse with *an* older man. This admission is reasonably construed to mean that the complainant had experienced oral intercourse with only *one* older man and that the reference was to Appellant. In this context, evidence that the complainant had previously testified that an older man, not her stepfather, had induced her to have oral intercourse by offering her cocaine while she was under the age of sixteen, would have supported a reasonable inference that the Appellant was not *the* older man the complainant referred to when she admitted an incident of oral intercourse to Hils. Given the fact that the complainant did not immediately identify the Appellant to Hils as the older man, but only did so in the Spring of 1986, some two years later, and after the Appellant had, concededly, engaged in intercourse with her, the excluded evidence might have played a significant role in the jury's determination of whether the claim against the Appellant actually occurred prior to January 27, 1984. The possibility that the excluded evidence might have had a significant impact on the jury's determination is enhanced by the fact that the complainant's testimony was inconsistent and confused and did not correlate with her initial statements to the police.

The remaining inquiry is whether the court erred in determining that the potential for prejudice of the complainant's prior sworn testimony outweighed the probative value.

In balancing the prejudice and the probative value, the judge failed to consider the probative value of Appellant's cross-examination of the complainant's prior testimony, but instead relied upon his initial pre-trial determination that the "other man" would not be permitted to testify that the complainant had accused him of engaging in oral sex with her.[6] The court then ruled that the Rape Shield Law barred cross-examination of the complainant on the issue of her prior

---

6. The judge's pre-trial reasoning was that the requested testimony was not likely to be probative of the complainant's truthfulness because the "older man" could be exposed to criminal liability if he testified that the complainant's testimony was anything other than false.

sexual conduct. In so holding, the court violated Appellant's right to present his defense fully.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to confront witnesses against him, which includes the right to cross-examine. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). This right is also secured by the confrontation clause of our state Constitution. Pa. Const.Art. I, § 9.

Cross-examination is a vital and fundamental part of a fair trial, providing the principal means by which the believability of a witness and the truth of his testimony are tested. In criminal cases, this right extends beyond the subjects testified to on direct examination, and includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters testified to on direct examination. *Commonwealth v. Green,* 525 Pa. 424, 454, 581 A.2d 544, 559 (1990). Subject always to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's memory and perceptions, but the cross-examiner has traditionally been allowed to impeach or discredit the witness's story. *Commonwealth v. Robinson,* 507 Pa. 522, 491 A.2d 107 (1985).

It is clear that the need existed to discredit the complainant's story that Appellant was the older man referred to on the night of January 27, 1984. During his cross-examination of the complainant, Appellant's counsel was not permitted to inquire about the complainant's prior sworn testimony that while she was still under the age of sixteen, her stepfather's friend induced her to engage in oral intercourse by offering her cocaine. Had the proffered evidence been introduced, it would have cast a shadow on the complainant's credibility by bolstering Appellant's contention that he did not engage in sexual activity with the complainant prior to her sixteenth birthday.

During recross-examination, Appellant's counsel was also prevented from inquiring into the complainant's direct testi-

mony. Because the object of cross-examination is to elicit all the facts of any observation or transaction which has not been fully explained, this proposed cross-examination was proper to show an alternative account of the complainant's statement to Hils that she had experienced oral sex with an older man. If the alternative account were accepted, the proffered evidence would tend to discredit the complainant's allegations and thereby directly and significantly undermine the charges. The Commonwealth contends that all cross-examination was correctly precluded under the Rape Shield Law. Excluding evidence of a rape complainant's reputation for chastity or sexual conduct serves important goals: abating the victim's ordeal at trial, lessening the possibility of unjust influence by controlling inflammatory evidence tending to cast the victim as somehow being the cause of the assault, and encouraging reports of rape.

Notwithstanding these worthy legislative aims, rules excluding evidence cannot be mechanistically applied to abridge a defendant's right of confrontation by denying admission of highly reliable and relevant evidence critical to his defense. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

In this case, the excluded evidence gained enhanced relevance and probative value in light of three developments at trial, each of which the Commonwealth exploited in its closing argument. First, the Commonwealth presented evidence that the night the complainant exchanged confidences with Hils was so momentous an event that Hils had inked "A night to remember, K.H. + J.K., 1–27–84," on the ceiling of the dressing room. The Commonwealth introduced a photograph of the graffiti.[7]

7. "What did he do? Stood up on that table and used that ink pen for however long it took him; that ink running down, he carved something that is very significant that is; you are looking for an anchor, the anchor in this case that establishes that this happened before the 16th birthday of [J.K.] What he did ... was to carve into the ceiling along with the other graffiti that's around this room, "A night to remember. K.H. and J.K." The date, "1–27–84." R. 514a.

Second, this evidence that the complainant admitted to Hils to having engaged in oral intercourse with an "older man" raised the inference that there was only one older man, her stepfather.[8]

Third, after marking the date of the shared confidence at January 27, 1984, and promoting the inference that there was only *one* older man, the Commonwealth took unfair advantage of the exclusion of the prior sworn testimony of the complainant wherein the complainant had testified under oath to similar sexual contact with a different older man.[9]

> "She's not being held to times. There is no requirement that you hold her to an exact number of times. Except one. And once you find that it happened one time, one time is enough.
> That's all you have to find, ladies and gentlemen of the jury. You don't have to find two, three or ten. One time is enough; and that's that time in June of 1983...." R. 512a.

8. "Now, if [J.K.'s] testimony alone as I have indicated to you is sufficient, once you believe [J.K.], you stop right there, find this defendant guilty. But then you add the testimony of Karl Hils ... to corroborate it and establishes it that it happened before the age of 16 because that's the thing you have to decide.
As the defense has said to you in their opening, if it's before 16, it's a crime. But after, if it's after 16, ain't no crime. Clearly before 16. [J.K.'s] testimony; Karl Hils' testimony; you can stop right there and that's it. If you believe that, if you find that, that's enough to convict this defendant." R. 512a.
"So ... look at that corroboration and you look at that anchor; you look at the photograph, you will be able to conclude that the evidence has clearly established the defendant's guilt...." R. 523a.

9. "Now, you would have to believe that [J.K.] for some reason or another as early as January the 27th of 1984 is confusing that summer that's going to come with what had happened in the past? That doesn't make sense.... Because that night at Central Catholic ... what [J.K.] had said to Karl was that earlier that summer back in 1983, she had had sex with an older man. And it was oral sex with an older man. Clearly consistent, clearly corroborative of [J.K.'s] testimony." R. 513a.
"What confusion is there about that time when this activity, according to the defense, hadn't even happened yet; doesn't happen until that next summer. What is she doing on January 27, of 1984 in this very effective demeanor, crying, concerned? What is she doing telling someone else about this if it didn't happen? What is she doing telling someone consistent with what actually happened; the oral sex? She's doing it, ladies and gentlemen of the jury, simply that's the way it happened." R. 515a.

The combined effect of this conduct by the Commonwealth was to raise the issue of the victim's social and sexual relationships and use it to advance an inference that the victim confided to Hils that she had experienced oral intercourse with the Appellant prior to her sixteenth birthday. Once the Commonwealth anchored *an* incident of oral intercourse with *an* older man prior to January 27, 1984, it then became even more critical to permit Appellant to argue a contrary inference relating to that relationship.

The statute cannot be both shield and sword. Here a statute is so designed to protect the witness's interest in preventing prejudicial disclosure of the witness's past behavior. It cannot at the same time preclude a defendant from offering evidence which is so highly probative of the witness's credibility that such evidence is necessary to allow/permit a jury to make a fair determination of the defendant's guilt or innocence. The statute must yield to a defendant's basic constitutional right.

We are, of course, mindful that the allowance or disallowance of questions on cross-examination is normally left to the sound discretion of the trial judge. But where limitations imposed by the court upon cross-examination are such as plainly inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable. Accordingly, in this instance, we reverse and remand for a new trial.[10]

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

NIX, C.J., concurs in the result.

---

10. In light of our disposition of this case, we need not address Appellant's additional claim that the court erred in refusing to grant a mistrial on the grounds of prosecutorial misconduct.