753 A.2d 225

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Timothy Paul MINERD, Appellant.**

Supreme Court of Pennsylvania.

Argued March 8, 2000.

Decided June 20, 2000.

48

Mark F. Morrison, Uniontown, Valerie M. Schwab, for Timothy Paul Minerd.

Peter Hook, Uniontown, Hugh J. Burns, Jr., Philadelphia, Jack R. Heneks, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

The question presented in this appeal is whether the Commonwealth may, as part of its case-in-chief in a sexual assault prosecution, offer the testimony of an expert that the absence of physical trauma is nevertheless consistent with the alleged sexual abuse. For the reasons stated herein, we hold that such testimony is admissible in the Commonwealth's case-in-chief and accordingly, we affirm.

The following facts were developed at trial. The two victims were V.M., who was born in 1977, and her sister J.M., who was born in 1978. Their mother became romantically involved with Appellant, the brother of the girls' father, and in the early 1980s, he moved into the girls' home in Lemont Furnace, Pennsylvania. Appellant married the girls' mother in 1983.

In the early 1980s, appellant would look after the children in the evening while their mother was away from the home selling Tupperware at parties. V.M., who was twenty at the time of trial, testified that appellant began molesting her when she was three and one-half or four years old. She recounted that Appellant would awaken her in her bedroom and then take her into the bathroom and remove her clothes. He would

have her wring out his wet jeans by walking on them in the bathtub. Afterwards, appellant would have V.M. step out of the tub and face away from him, and then he would touch her and engage in anal intercourse with her. Although V.M. did not remember the exact number of incidents, she recalled that they happened repeatedly while the family lived in Lemont Furnace.

According to V.M.'s mother, the family moved to Fairchance, Pennsylvania in 1984, where V.M. stated that appellant molested her three or four more times. V.M.'s younger sister, J.M., testified that appellant molested her in a similar manner when she was six years old. V.M. testified that appellant told her that if their mother learned about the incidents, she would abandon her just as their father had. The girls' mother stated that Appellant moved out of the home in 1985; they divorced in 1987. Appellant asserted that he had never lived with the family in Fairchance and denied all allegations of sexual abuse.

In 1989, after V.M. learned about AIDS in school, she became convinced that she had contracted the disease from appellant and revealed to her mother that she had been molested. J.M. then disclosed that appellant had sexually abused her as well. The girls' mother sought assistance from several social services agencies, and ultimately reported the incidents to the Pennsylvania State Police, who prepared an arrest warrant for appellant on October 4, 1989. Although appellant knew of the warrant in 1990, he did not surrender to police until June 1997.

At the trial in January 1998, the Commonwealth presented the testimony of Dr. Margaret Carver, a qualified expert in obstetrics and gynecology, who examined the girls on October 26, 1989, when V.M. was twelve years old and J.M. was eleven years old. Dr. Carver testified that she found no evidence of physical trauma to the girls' genital or anal areas. N.T. at 114–15. According to Dr. Carver, the absence of physical trauma did not prove that the abuse had never occurred. N.T. at 115. She explained that because of the nature of the muscle that closes the anus, there would have been an ade-

quate time between when the abuse occurred and the examination for any damage that had been done to heal. *Id.* On cross-examination, Dr. Carver confirmed that she was not stating that the alleged acts did or did not occur, and agreed that that it could be that "there was no trauma to the anus or genitals because the acts in fact did not occur." N.T. at 117–18. Dr. Carver stated that "either way, there was no evidence of it." N.T. at 118.

The jury convicted appellant of one count each of involuntary deviate sexual intercourse (18 Pa.C.S. § 3123) and statutory rape (18 Pa.C.S. § 3122) for crimes committed against V.M. Appellant was also convicted of two counts of indecent assault (18 Pa.C.S. § 3126), one count for each child. He was acquitted of statutory rape and involuntary deviate sexual intercourse for alleged incidents involving J.M. The trial court sentenced appellant to an aggregate term of imprisonment of seven and one-half to twenty-two years.

Appellant simultaneously filed post-verdict motions and a notice of appeal alleging, *inter alia*, that the trial court erred in admitting the testimony of Dr. Carver. The trial court dismissed the post-verdict motions on the basis that the filing of the notice of appeal had divested the court of jurisdiction. In the trial court's opinion pursuant to Pa.R.A.P.1925, the trial court concluded that Dr. Carver's "opinion that the lack of medical evidence is not inconsistent with the allegation of anal sodomy set forth in the history of the child because of the adequate time period for healing of wounds is admissible." Tr. Ct. Opin. at 13. On appeal, the Superior Court affirmed in a memorandum opinion, relying on *Commonwealth v. Johnson*, 456 Pa.Super. 251, 690 A.2d 274 (1997) (en banc).

In *Johnson*, a majority of an *en banc* panel of the Superior Court held that the trial court erred in excluding expert testimony that the "absence of diagnostic injuries or scars is common and does not exclude the possibility of penile anal penetration or other forms of sexual contact." *Id.* at 277. The panel reasoned that generally, testimony regarding conduct or behavior of victims of sexual assaults is not admissible since it tends to invade the jury's function of evaluating

witness credibility, whereas testimony regarding physical facts is admissible. *Id.* at 275 (citations omitted). The court analogized to *Commonwealth v. Hernandez,* 420 Pa.Super. 1, 615 A.2d 1337 (1992), in which the Superior Court found that a pediatrician could testify "that the physical facts observed and reported by the treating physician were consistent with the allegation of anal sodomy." *Id.* at 1343. Following the reasoning in *Hernandez,* the court in *Johnson* concluded that "this subject is appropriate for expert testimony because the physical condition of a sexual assault victim is not a matter that is typically within the knowledge of average jurors." 690 A.2d at 277 (citation omitted). The court further found that the expert testimony did not encroach upon the jury's province of determining witness credibility since the testimony pertained to objective medical facts, rather than explanations of behavioral patterns. *Id.* (citation omitted).

The court in *Johnson* rejected the trial court's reliance on two prior decisions, *Commonwealth v. Garcia,* 403 Pa.Super. 280, 588 A.2d 951 (1991) (en banc), *alloc. denied,* 529 Pa. 656, 604 A.2d 248 (1992), and *Commonwealth v. McCleery,* 439 Pa.Super. 378, 654 A.2d 566 (1995). In *Garcia,* the Superior Court sitting en banc determined that expert testimony regarding the reasons why child victims delay in reporting sexual abuse was inadmissible because it improperly bolstered the child victim's credibility. 588 A.2d at 955. The court also indicated that testimony regarding the presence and absence of physical trauma was inadmissible since its prejudicial impact outweighed its probative value. *Id.* at 952 n. 3. Following the reasoning in *Garcia,* the court in *McCleery* determined that expert testimony that most child victims of sexual abuse delay in reporting the abuse, and expert testimony that the absence of any physical evidence of trauma was consistent with the victim's allegations of sexual abuse, was inadmissible. 654 A.2d at 569. The court in *Johnson* overruled those cases to the extent that they indicated "that expert testimony regarding the absence or presence of evidence of physical trauma on sexual abuse victims is inadmissible." 690 A.2d at 277. Finally, the court did not address the issue of relevancy or

whether the probative value of the testimony was outweighed by its prejudicial impact as the relevancy issue was not properly preserved.

The dissenting opinion was authored by Judge Cirillo, who was joined by Judge Schiller. Relying on *Garcia* and *McCleery*, they believed that the expert testimony improperly bolstered the credibility of the witness. The dissenters distinguished *Hernandez* since the expert testimony there was admitted on cross-examination and with regard to positive physical findings of rape trauma. The dissenters noted that the expert's findings were made almost two years after the alleged assault, and they opined that the jury could have concluded without expert testimony that an assault occurred because the trauma may have healed over time. Finally, the dissenters argued that the prejudicial effect of the evidence outweighed its probative value, especially since it was introduced on direct, a situation which only confused or prejudiced the jury; the dissent did indicate, however, that if "the defense has asserted that the evidence of physical trauma is an element that must be proven in an assault case", then it would be proper for the Commonwealth, on rebuttal, to introduce the expert testimony. 690 A.2d at 279.

At the outset, we must set forth the appropriate standard and scope of review. As our standard of review, we recognize that an appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. Hawk*, 551 Pa. 71, 709 A.2d 373, 376 (1998). Because the trial court indicated the reason for its decision to admit Dr. Carver's testimony, our scope of review is limited to an examination of the stated reason. *See Morrison v. Commonwealth*, 538 Pa. 122, 646 A.2d 565, 570 (1994).

Appellant challenges the admission of the evidence on several grounds and urges us to adopt the dissenting opinion in *Johnson*. In particular, he claims that the testimony improperly bolstered the victims' credibility; that its probative value is outweighed by its prejudicial value; that it was irrelevant;

and that it may have unduly influenced the jury. We are not persuaded by any of these arguments.[1]

Citing the reasoning in *Garcia* and *McCleery,* Appellant initially asserts that the expert testimony is inadmissible because it improperly bolsters the victim's credibility, and as such, the prejudicial impact of the testimony outweighs its probative value.

 Expert testimony generally is admissible to aid the jury when the subject matter is distinctly related to a science, skill or occupation which is beyond the knowledge or experience of an average lay person. *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284, 302–03 (citing *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30, 33 (1976)), *cert. denied,* —— U.S. ——, 120 S.Ct. 97, 145 L.Ed.2d 82 (1999). Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge. *Id.* at 303. In assessing the credibility of a witness, jurors must rely on their ordinary experiences of life, common knowledge of the tendencies of human behavior, and observations of the witness' character and demeanor. *Id.* Because the truthfulness of a witness is solely within the province of the jury, expert testimony cannot be used to bolster the credibility of witnesses. *See id.*

 In this case, Dr. Carver's testimony was probative of the veracity of the children. *See Hawk,* 709 A.2d at 377 (negative rape kit test results were probative of defendant's claim of innocence). However, Dr. Carver was neither asked for, nor did she express, any opinion as to whether the children were telling the truth about being sexually abused. Her testimony only explained the significance of the results of the physical examination. *See Johnson,* 690 A.2d at 277. Moreover, Dr. Carver's testimony regarding her physical findings was inconclusive as to whether any abuse had even

1. The Commonwealth contends that the appellant has waived several of these issues. Our review of the record indicates otherwise, and accordingly, we proceed to review them on their merits.

56

occurred. Thus, we do not agree that the expert impermissibly bolstered the children's credibility.

Next, Appellant advances several theories as to why the evidence is irrelevant. For example, echoing the dissent in *Johnson*, appellant notes that the physical exam occurred five or six years after the alleged abuse, and no medical history existed until Dr. Carver performed the examinations. Appellant suggests that the passage of time between the exam and the abuse renders the expert's testimony irrelevant, and that its admission in the Commonwealth's case-in-chief was more prejudicial than probative. We do not agree.

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Hawk,* 709 A.2d at 375 (1998) (citing *Commonwealth v. Spiewak,* 533 Pa. 1, 617 A.2d 696, 699 (1992)). Furthermore, "[a] qualified expert may be permitted to assert a relevant fact not generally known but known to him because of his special training and experience." *Steele v. Shepperd,* 411 Pa. 481, 192 A.2d 397, 398 (1963).

In this case, Dr. Carver had expert knowledge of a child's rectal and genital anatomy. Such knowledge in the context of suspected sexual abuse is beyond the ken of an average juror. *See Johnson,* 690 A.2d at 277. This is especially so when the physical examination does not occur immediately after the alleged abuse. Furthermore, the passage of time between the abuse and the examination does not render the expert's testimony inadmissible; rather, it is merely a factor for the jury to consider in determining how much weight to accord the expert's testimony.

Appellant suggests that the admission of such testimony may be proper on rebuttal, but not on direct, as it may otherwise confuse and prejudice the jurors. Again, we disagree.

It is axiomatic that the Commonwealth has the burden of proving every element of the offense for which the

defendant is charged beyond a reasonable doubt. The jurors, as factfinders, are entrusted with the responsibility of evaluating the evidence and rendering a decision based on the evidence presented and the inferences deduced therefrom. In this case, the defendant was charged with sexually abusing his stepchildren. Since the children alleged that the abuse occurred several years ago, there was no recent physical evidence. Given this passage of time, Dr. Carver's testimony was relevant to explain to the jurors the absence of physical trauma. Without such an explanation, jurors may improperly draw a negative inference against the Commonwealth, based upon a layperson's untutored assumptions, and rely upon that inference in rendering a verdict. *See* S.A. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence,* 66 Cal. L.Rev. 1011, 1019 ("[O]nce certain theories of a case are presented and some evidence is offered to support them, triers of fact, especially juries untrained in evidence law and the rules governing litigation, may expect to hear specific kinds of proof in further support of or in response to the offered evidence. If their expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party.") (footnotes omitted); *Commonwealth v. Allison,* 550 Pa. 4, 703 A.2d 16, 18 (1997) (where the Commonwealth failed to offer qualified expert testimony to explain significance of lay person's observations, "the jury was left without any understanding or guidance as to what inferences could fairly be drawn from the fact that [the lay person] observed a split in the [child] complainant's hymen.").

Limiting the admission of expert testimony to rebuttal is an imperfect procedure, as the defense may not introduce the examination results, thereby depriving the Commonwealth of the opportunity to counteract the jurors' negative inferences. Moreover, the admission of the evidence on direct will not confuse or prejudice the jury any more than if it is introduced on rebuttal, since in both cases, the defense will have the opportunity to cross-examine the expert. Hence, there is no need to limit this type of expert testimony only on rebuttal; it may be admitted in the Commonwealth's case-in-chief.

58

■ Appellant also claims that the expert testimony is irrelevant because it is speculative. He asserts that since Dr. Carver rendered two opposing opinions, her testimony is speculative and thus does not help jurors, but rather confuses them and forces them to speculate. Initially, we note that Dr. Carver in fact rendered only one opinion, viz., the examination results were inconclusive. Moreover, we recently addressed a similar issue in *Hawk, supra,* in which we determined that the trial court abused its discretion in precluding the defense from admitting testimony of a forensic scientist regarding the negative test results of a rape kit. We rejected the lower court's concern that the testimony was speculative, stating "[t]he inconclusiveness of the negative test results does not render the scientist's testimony inadmissible." 709 A.2d at 377. Because the expert could offer the jury potential theories to explain the negative test results, "her testimony would have assisted the jury in its interpretation of the physical evidence." *Id.* We noted that the Commonwealth was entitled to cross-examine the scientist to challenge the reliability of her findings, and that the jury was free to evaluate the expert testimony and accept or reject some, none or all of the scientific evidence. *Id.* (citations omitted).

The expert testimony in the instant case is similar to that offered in *Hawk.* Dr. Carver's testimony offered the jury potential theories to explain the results of the physical examination of the children. Appellant's counsel cross-examined the expert witness in order to explore the reliability of her findings, and in fact was able to elicit an explanation of the results that was helpful to the defense. The jury, upon hearing all of these theories, was able to accept or reject any part of the expert's testimony. Consequently, we find no merit to this claim.[2]

Next, Appellant suggests that Dr. Carver's testimony was irrelevant because it was unreliable. Specifically, he claims that apart from the examination of the children in 1989, there

2. While this author dissented in *Hawk,* the principle of stare decisis requires that the decision of the majority be followed here. *See Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 903 n. 9 (1996).

was no new evidence of abuse. Appellant reasons that Dr. Carver's conclusions were based on facts not of record, and argues that without the facts, the jury is unable to determine the validity of the expert's opinion. Thus, appellant concludes, the prejudicial impact of the evidence outweighs its probative value and the jury is forced to speculate. In *Commonwealth v. Rounds*, 518 Pa. 204, 542 A.2d 997 (1988), we held that counsel was ineffective for failing to object to the testimony of an expert that a child had been abused, since the expert's testimony was based on a case history which was not before the jury. We stated that "expert opinion testimony is proper if the facts upon which it is based are of record." *Id.* at 999. In this case, Dr. Carver did testify as to the children's case histories. N.T. at 113–15. Additionally, the victims themselves testified as to the sexual abuse. As a result, the jury was able to properly evaluate Dr. Carver's testimony. Appellant has demonstrated no error.

Finally, appellant claims that the jury may have been unduly impressed by the expert's testimony. Appellant reasons that the jury essentially is asked to conclude that the assaults occurred because the expert stated that there was no physical evidence to prove the assaults, thereby allowing the Commonwealth to prove its case through "non-evidence." This claim has no merit. Dr. Carver did not offer only one biased view of the physical evidence; to the contrary, defense counsel elicited an explanation which was equally favorable to appellant. Moreover, the trial judge clearly advised the jury that they were not bound to accept the expert's testimony merely because she possessed special skill or knowledge. N.T. at 253. The law presumes that the jury follows the court's instructions. *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 726–27, *cert. denied*, —— U.S. ——, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999). We fail to see how the jury could have been unduly influenced under these circumstances.

Accordingly, we hold that the trial court did not abuse its discretion in admitting the expert's testimony. The order of the Superior Court is affirmed. Jurisdiction is relinquished.

Justice NIGRO files a concurring opinion.

NIGRO, Justice, concurring.

I join Justice Cappy's majority opinion for very much the same reasons that I joined Madame Justice Newman's majority opinion in *Commonwealth v. Hawk*, 551 Pa. 71, 709 A.2d 373 (1998).[1] Like the expert testimony proffered by the defendant in *Hawk*, which concerned a negative rape kit test result, the expert testimony proffered by the prosecution in the instant case, which concerned the results of physical examinations of the victims, is both relevant under the standard set forth in *Commonwealth v. Spiewak*, 533 Pa. 1, 617 A.2d 696 (1992)[2], and more probative than prejudicial. Thus, the majority correctly concludes that the Superior Court did not err in finding that the trial court did not abuse its discretion in ruling that the expert testimony was admissible.

---

**1.** I filed a concurring opinion in *Hawk* solely to address concerns raised by the dissent regarding the relevancy of the expert testimony at issue in the appeal.

**2.** Under *Spiewak*, "[e]vidence is relevant if it tends to logically establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Spiewak*, 533 Pa. at 8, 617 A.2d at 699.