J-S25026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GLYNN A. WILDONER, JR. :
:
Appellant : No. 981 MDA 2018

Appeal from the Judgment of Sentence January 26, 2018
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003314-2016

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED JUNE 11, 2019**

Glynn A. Wildoner, Jr. (Appellant) appeals from the judgment of
sentence imposed after a jury convicted him of three counts of rape, three
counts of statutory sexual assault, one count of involuntary deviate sexual
intercourse with a person less than 16 years of age, four counts of unlawful
contact with minor, one count of aggravated indecent assault, four counts of
corruption of minors, two counts of endangering the welfare of children, and
four counts of indecent assault.[1]  After careful review, we affirm.

Appellant's convictions arise from a series of sexual assaults he
committed on K.H. and A.H., who were both 14 years old at the time of the
offenses.  According to the testimony at trial, the first of the sexual assaults

---

[1]  18 Pa.C.S.A. §§ 3121(a)(1), 3122.1(b), 3123(a)(7), 6318(a)(1),
3125(a)(1), 6301(a)(1)(ii), 4304(a)(1), 3126(a)(2).

involving K.H. occurred sometime in May 2016, when Appellant, while alone with K.H., inserted his finger into to her vagina and then engaged in vaginal intercourse with her. Appellant told K.H. that he would kill her if she told anyone what he had done to her. On or around June 2 or 3, 2016, Appellant again sexually assaulted K.H. when he drove her to his house, and engaged in vaginal intercourse with her. Appellant again told K.H. that he would kill her if she told anyone what he had done.

The last sexual assault occurred on June 16, 2016. On that date, K.H. awoke to find Appellant on top of her having vaginal intercourse with her with his hands over her mouth. Appellant then forced K.H. to engage in oral intercourse with him. When K.H. tried to get up and leave, Appellant forced her back onto the floor and continued to sexually assault her. Appellant only stopped when he heard K.H.'s mother begin to enter the room. At that point, K.H.'s mother observed Appellant quickly stand and pull his pants up. K.H. immediately went to the neighbor's house and called the police.

Appellant's sister, A.H., testified that Appellant had also attempted to sexually assault her a couple of months before he sexually assaulted K.H. She stated that she was alone with Appellant in his bedroom when he started to pull his pants down. When A.H. told him to stop, he did so, but then tried unsuccessfully to pull her pants off. A.H. reported no other inappropriate contact by Appellant.

Appellant was arrested and charged with numerous crimes. On October 31, 2017, Appellant's case proceeded to a jury trial. The same day, the jury found Appellant guilty of the above-referenced sex offenses.

On January 26, 2018, the trial court sentenced Appellant to 25 to 50 years of incarceration. On February 1, 2018, Appellant filed post-sentence motions, which the trial court denied on May 22, 2018. This timely appeal followed. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents the following issues for review:

1. Did the trial court err or abuse its discretion by precluding the defense from presenting testimony of Brian Morgis on whether underwear was collected from [] Appellant when he was processed for incarceration; the testimony of April Hess that [] Appellant did not wear underwear; and Helen Hess that he did not own underwear?

2. Did the trial court err or abuse its discretion in allowing the admission of an opinion of Cheryl Friedman that K.H. had been sexually assaulted, which opinion was not based upon physical examination, which improperly bolstered the credibility of the victim, invaded the province of the jury on an ultimate issue, and was admitted contrary to Pa.R.E. 403?

3. Did the Commonwealth fail to present sufficient evidence to prove, beyond a reasonable doubt, that [] Appellant engaged in conduct with A.H. that constituted corruption of a minor?

Appellant's Brief at 2.

For his first issue, Appellant argues that the trial court abused its discretion in precluding the testimony of Brian Morgis (Morgis), who would have testified that Appellant was not wearing underwear when Morgis

processed Appellant for incarceration. Appellant also argues that the trial court abused its discretion in precluding the testimony of April Hess (April), Appellant's fiancé, who would have testified that Appellant did not wear underwear, and the testimony of Helen Hess (Helen), April's mother, who would have testified that Appellant did not own underwear. Appellant asserts that this evidence was necessary to impeach the testimony of K.H., who reported that Appellant had removed his underwear while sexually assaulting her. Appellant maintains that impeaching K.H.'s testimony was critical to his defense because there was no physical evidence that he had sexually assaulted her.

We begin by acknowledging our standard of review:

> "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." **Commonwealth v. Reid**, [] 99 A.3d 470, 493 ([Pa.] 2014). An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. **Commonwealth v. Davido**, [] 106 A.3d 611, 645 ([Pa.] 2014).

**Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015).

Under Rule 607 of the Pennsylvania Rules of Evidence, "[t]he credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607(b). As the Comment to Rule 607 explains, "Pa.R.E. 607(b) applies the test for relevant

evidence of Pa.R.E. 401 to evidence offered to impeach the credibility of a witness." Pa.R.E. 607 (comment).

Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; (b) the fact is of consequence in determining the action." Pa.R.E. 401; **see also Commonwealth v. Reid**, 811 A.2d 530, 550 (Pa. 2002) ("Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact."). The Comment to Rule 401 indicates that "[w]hether evidence has a tendency to make a given fact more or less probable is to be determined by the court in light of the reason, experience, scientific principles and the other testimony offered in the case." Pa.R.E. 401 (comment).

Additionally, "[a]lthough a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact." **Reid**, 811 A.2d at 550; **see also** Pa.R.E. 607 (comment) ("[T]here are limits on the admissibility of evidence relevant to the credibility of a witness imposed by these rules. For example, Pa.R.E. 403 excludes relevant evidence if its probative value is outweighed by danger of unfair prejudice, etc[.]"). Specifically, Rule 403 provides, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Here, although the trial court did not let Morgis, April, and Helen testify regarding whether Appellant wore or owned underwear, the trial court did state that it would allow Appellant to give such testimony when he took the stand in his defense. *See* N.T., 10/31/17, at 188. Appellant, however, did not provide any testimony relating to his underwear habits. *See id.* at 190-231. Thus, we cannot conclude that Appellant was prejudiced by the trial court's refusal to allow the other three individuals to testify regarding his underwear habits when he did not provide any such testimony himself after the court afforded him the opportunity to do so. Consequently, Appellant's underwear habits were never an issue at trial, and this issue was not relevant.

Moreover, even if the trial court would have allowed the three individuals to testify regarding whether Appellant wore or owned underwear, it would have done nothing to impeach the testimony of Candy Wildoner (Wildoner). Wildoner was the only person who testified, other than the two victims, with a first-hand account of one of the sexual assaults. Wildoner stated that she walked in on Appellant pulling up and zipping up his pants while K.H. laid on the floor. *Id.* at 66. Wildoner testified that when she asked Appellant what was going on, he responded that "he wasn't doing nothing; that [K.H.] was playing with herself." *Id.* at 67. Nowhere in her testimony did Wildoner say anything about Appellant's underwear. Accordingly, because any testimony

relating to Appellant's underwear habits would have been irrelevant, we conclude that the trial court did not abuse its discretion in precluding Morgis, April, and Helen from testifying about whether Appellant wore or owned underwear. ***See*** Pa.R.E. 607(b); ***Reid***, 811 A.2d at 550.

For his second issue, Appellant argues that the trial court abused its discretion in admitting certain findings from Cheryl Friedman (Friedman)[2] following her interview and physical examination of K.H. after K.H. called the police with allegations of sexual assault against Appellant. Specifically, Appellant takes issue with the trial court's decision to allow Friedman to testify about her diagnosis of "sexual assault by history." Appellant's Brief at 22-29. Appellant asserts that by allowing the admission of this diagnosis, the trial court permitted Friedman to provide opinion testimony expressing her belief that Appellant sexually assaulted K.H., even though Friedman's physical examination of K.H. revealed no evidence of sexual assault. Appellant contends that such testimony was improper because it bolstered the credibility of K.H. without physical evidence of sexual assault.

With respect to expert testimony, our Supreme Court has explained:

Expert testimony generally is admissible to aid the jury when the subject matter is distinctly related to a science, skill or occupation which is beyond the knowledge or experience of an average lay person. Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge. In assessing the credibility of a witness, jurors must rely on their ordinary experiences of life, common knowledge of the tendencies of

---

[2] Friedman is a Certified Nurse Practitioner.

human behavior, and observations of the witness' character and demeanor. Because the truthfulness of a witness is solely within the province of the jury, expert testimony cannot be used to bolster the credibility of witnesses.

*Commonwealth v. Minerd*, 753 A.2d 225, 230 (Pa. 2000) (citations omitted).

In support of his claim, Appellant relies on our Supreme Court's decision in *Commonwealth v. MaConeghy*, 171 A.3d 707 (Pa. 2017). In *MaConeghy*, the defendant was convicted of various sexual crimes, including rape by forcible compulsion and rape of a child, arising out of allegations that the defendant repeatedly sexually assaulted his step-daughter. *Id.* at 708. At trial, the physician who conducted a physical examination of the victim testified that that "[t]he history she provided to me pretty clearly indicated that she was sexually abused," and that "I really believe strongly that was my medical conclusion that this child was victimized." *Id.* (quotations and citations omitted). The physician, however, also testified that he "found no evidence of abuse in the physical exam[.]" *Id.*

On appeal, this Court awarded the appellant a new trial, concluding that the physician's testimony "improperly constituted an opinion as to whether the victim was telling the truth, and intruded into the jury's function to assess the credibility of witnesses." *Commonwealth v. MaConeghy*, 2191 MDA 2014 at 9-10 (Pa. Super. June 12, 2015) (unpublished memorandum). Our Supreme Court affirmed, holding that:

an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse. We find that such testimony intrudes into the province of the jury relative to determining credibility.

*MaConeghy*, 171 A.3d at 712. The Supreme Court recognized "the high stakes involved in child sexual assault cases and the potential power and persuasiveness of testimony by those clothed with the mantle of professional expertise." *Id.* at 713.

In response, the Commonwealth relies on our Supreme Court's decision in *Minerd*. In that case, the defendant was convicted of various sex offenses arising out the sexual assault of his two nieces. *Minerd*, 753 A.2d at 227-28. At trial, the expert physician who examined the victims, albeit several years after the sexual assaults occurred, testified that while she found no physical evidence of sexual abuse, "the absence of physical trauma did not prove that the abuse had never occurred." *Id.* at 228. On cross-examination, the expert physician "confirmed that she was not stating that the alleged acts did or did not occur," but simply was stating that "there was no evidence of it." *Id.* at 228 (quotations and citations omitted).

On appeal, our Supreme Court disagreed with the defendant's claim that the expert physician's testimony had improperly bolstered the victim's credibility. *Id.* at 230. The Court explained:

> [The physician] was neither asked for, nor did she express, any opinion as to whether the children were telling the truth about being sexually abused. Her testimony only explained the significance of the results of the physical examination. Moreover,

> [the physician]'s testimony regarding her physical findings was inconclusive as to whether any abuse had even occurred. Thus, we do not agree that the expert impermissibly bolstered the children's credibility.

***Id.*** at 230.

In this case, Friedman provided a diagnosis for K.H. following an interview and physical exam of "sexual assault by history." Neither Friedman's testimony nor her report, however, precisely explains the meaning of this diagnosis. At trial, Friedman explained the following with respect to her diagnosis:

> I take into account everything that has happened that evening – the interview, the forensic interview, that has taken place, as well as my discussion with [K.H.], obtaining her medical history and her concerns, as well as the treatment I provided that evening and the recommendation for further treatment after she leaves.

N.T., 10/31/17, at 123-24.

Thus, from what we can discern from Friedman's testimony, the diagnosis of "sexual assault by history" represents nothing more than an expression that K.H. relayed that she was sexually assaulted, and Friedman provided and recommended corresponding treatment. Unlike the expert in ***MaConeghy***, at no point during her testimony did Friedman express, either implicitly or explicitly, any kind of opinion or belief that K.H. was sexually assaulted. ***See id.*** at 110-37. Like the expert in ***Minerd***, the Commonwealth did not ask Friedman to express such an opinion. ***See id.*** Indeed, on cross-examination, when defense counsel asked Friedman if it was "possible that there were no injuries [discovered during the physical examination of K.H.]

because nothing happened in the first place[,]" Friedman responded in the affirmative. *Id.* at 134. Therefore, Friedman's testimony more closely resembles that of the expert in *Minerd*. Consequently, we conclude that the trial court did not abuse its discretion in declining to exclude testimony relating to Friedman's diagnosis of "sexual assault by history."

For his third issue, Appellant argues that the evidence was insufficient to sustain his conviction of corruption of minors, graded as a third-degree felony, relating to his conduct with A.H. Specifically, Appellant asserts that the Commonwealth failed to present evidence that he engaged in a "course of conduct in violation of Chapter 31[,]" which Section 6301(a)(1)(ii) requires to establish a conviction for corruption of minors graded as a third-degree felony. Appellant's Brief at 31-32. Appellant emphasizes that "without a conviction based upon a course of conduct, a conviction and, then, a sentence is classified as a misdemeanor of the first degree under 18 Pa.C.S.A. § 6301(a)(1)(i)." Appellant's Brief at 31.

Appellant has failed to preserve this issue for appellate review because he did not raise it in his Pa.R.A.P. 1925(b) statement. In *Commonwealth v. Hill*, 16 A.3d 484 (Pa. 2011), our Supreme Court stated the following with respect to waiver under Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b)

statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule.

*Id.* at 494 (footnote omitted).

Importantly, this Court has explained that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). This Court has further explained, "[s]uch specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* Failure to identify what specific elements the Commonwealth failed to prove at trial in a 1925(b) statement renders an appellant's sufficiency of the evidence claim waived for appellate review. *Id*.

We have further stated that "the Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal[.]" *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018). "[A] Rule 1925(b) statement is a crucial component of the appellate process because it allows

the trial court to identify and focus on those issues the party plans to raise on appeal." *Id.*

Section 6301 of the Pennsylvania Crimes Code provides, in pertinent part, as follows:

(1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, **by any act corrupts or tends to corrupt the morals of any minor** less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards, **by any course of conduct in violation of Chapter 31** (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(a)(1) (emphasis added). Here, Appellant's conviction of corruption of minors for his conduct related to A.H. fell under Section 6301(a)(1)(ii).

In his Rule 1925(b) statement, Appellant challenges all of his corruption of minors convictions and states the following: "Did the Commonwealth fail to present sufficient evidence to prove, beyond a reasonable doubt, that [Appellant] engaged in conduct with K.H. and A.H. **which corrupted or tended to corrupt the morals of either complainant**?" Rule 1925(b) Statement, 7/23/18, ¶ 8(t) (emphasis added). In his appellate brief, however, Appellant argues that the Commonwealth failed to present sufficient evidence, with respect to his corruption of minors conviction relating to A.H., that he

- 13 -

engaged in "any **course of conduct** in violation of Chapter 31." Appellant's Brief at 31 (emphasis added) (quoting 18 Pa.C.S.A. § 6301(a)(1)(i)). Thus, in his brief, Appellant specifically bases his sufficiency challenge on the fact that his corruption of minors conviction with respect to A.H. was only supported by evidence of a single inappropriate act rather than a "course of conduct in violation of Chapter 31." *Id.* at 31-32. At no point in his brief does Appellant argue that the Commonwealth failed to prove that he engaged in conduct that corrupted or tended to corrupt the morals of K.H. or A.H.

Consequently, we conclude that Appellant has waived his challenge to his corruption of minors conviction (as it pertains to A.H.), by failing to preserve in his Rule 1925(b) statement the argument that he makes on appeal. At no point before the trial court did Appellant challenge his corruption of minors conviction based on the Commonwealth's failure to prove he engaged in a "course of conduct in violation of Chapter 31." *See* Appellant's Brief at 31. Instead, the argument he presented to the trial court was that the Commonwealth failed to prove that his actions "corrupted or tended to corrupt the morals of either complainant." Rule 1925(b) Statement, 7/23/18, ¶ 8(t). The argument Appellant raised in his Rule 1925(b) statement goes to the **type** of inappropriate conduct to which he subjected K.H. and A.H., while the argument Appellant makes in his brief goes to the **frequency**, or number of times, Appellant engaged in criminal violations under Chapter 31 with or in A.H.'s presence. In effect, the issue Appellant raised in his Rule 1925(b)

statement was a challenge to a conviction under Section 6301(a)(1)(**i**), while the issue he argues in his appellate brief challenges his actual conviction under 6301(a)(1)(**ii**).

Indeed, the trial court clearly understood Appellant's 1925(b) statement to raise an argument that the Commonwealth failed to prove that Appellant "corrupted or tended to corrupt the morals of either complainant." Given his numerous convictions of sex offenses stemming from various instances of inappropriate sexual contact with K.H. and A.H., the trial court summarily dismissed this claim in its Rule 1925(a) opinion. *See* Trial Court Opinion, 8/14/18, at 10 (unnumbered). Consequently, we are left with no explanation from the trial court as to how the Commonwealth presented sufficient evidence to prove Appellant engaged in a course of conduct that violated Chapter 31 of the Crimes Code. As we cannot conduct meaningful appellate review of Appellant's challenge to the sufficiency of the evidence of his corruption of minors conviction as it relates to A.H, Appellant's final issue is waived.[3]

Judgment of sentence affirmed.

---

[3] We note that even if we afforded Appellant relief on this issue, it would not disrupt the trial court's sentencing scheme, as the trial court ordered Appellant's sentence for conviction of corruption of minors (as it related to A.H.) to run concurrently to the remainder of his sentence. *See* Sentencing Order, 1/26/18.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/11/2019</u>