J-S32041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                             :              PENNSYLVANIA
                             :
          v.                  :
                             :
                             :
CHARLES E. TOWNSEND          :
                             :
        Appellant        :      No. 169 MDA 2025

Appeal from the Judgment of Sentence Entered January 23, 2025
In the Court of Common Pleas of Columbia County Criminal Division at
No(s):  CP-19-CR-0000730-2022

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:       **FILED: NOVEMBER 19, 2025**

Appellant, Charles E. Townsend, appeals from the judgment of sentence entered in the Court of Common Pleas of Columbia County after a jury convicted him of Corrupt Organizations, Conspiracy to Commit Delivery of a Controlled Substance, and Delivery of a Controlled Substance.  Herein, he raises challenges to the sufficiency of the evidence and an evidentiary ruling of the trial court.  We affirm.

The trial court has authored a Pa.R.A.P. 1925(a) opinion setting forth the procedural history and underlying facts, as follows:

> In the present case, after amendment to the Information prior to trial, the Defendant, [hereinafter "Appellant"], was charged with:
>
> Count 1:  Corrupt Organizations (F1) per 18 Pa.C.S. § 911(b)(3). This count alleged that Appellant was in an "Enterprise" (defined at § 911(h)(3) and alleged in the Information to include Samantha

---

[*] Former Justice specially assigned to the Superior Court.

Celona ("Celona"), Damon Magnuson ("Magnuson") and Amanda Saxer ("Saxer")).

Count 2: Conspiracy to Commit Delivery of a Controlled Substance (F) per 18 Pa.C.S. § 903 and 35 P.S. § 780-113(a)(30). This count was defined as such by agreement of counsel and Order dated January 13, 2025. An Order dated January 19, 2023, dismissed original Count 4 and merged all conspiracy allegations into Count 2, per § 903(c). The original information alleged that the conspiracy included Samantha Celona, Damon Magnuson, and Amanda Saxer.

Count 3: Delivery of a Controlled Substance (F) per 35 P.S. § 780-113(a)(3).

After a jury trial on January 13, 2025, the jury convicted Appellant of all three (3) counts. On January 23, 2025, [the trial court] sentenced Appellant as follows, all within the Standard Range:

Count 1 . . . 33-240 months, consecutive to Count 2;
Count 2 . . . 60-120 months, consecutive to Count [3];
Count 3 . . . 60-120 months, consecutive to sentences presently being served by Appellant in other cases.

Appellant filed a Notice of Appeal on February 6, 2025. On March 18, 2025, Appellant filed a Concise Statement of Matters Complained of on Appeal, specifying the following issues:

1. Did the trial court err by denying Appellant's motion for judgment of acquittal which sought to dismiss the Corrupt Organization charge because the evidence was insufficient to establish that Appellant engaged in a pattern of racketeering activity (N.T., trial, pp. 128-129): and

2. Did the trial court err by allowing the jury to learn about criminal acts of alleged co-conspirators whose cases were not consolidated with Appellant's which were irrelevant to any of the issues in Appellant's case? (N.T., trial, p. 69).

At trial, the Commonwealth based much of its case on the testimony of Agent Ian Urbanski of the Attorney General's Bureau of Narcotics. Agent Urbanski and a Confidential Informant

[("C.I.")] engaged in a controlled buy of narcotics and a gun from Magnuson and Saxer at the State Game Lands near Berwick, PA on January 27, 2021. Agent Urbanski was present through the entire transaction, which was complicated by the fact that Magnuson wrecked the Hyundai Elantra which Magnuson and Saxer had driven to that location. Magnuson showed Agent Urbanski the gun and methamphetamine hidden under a log. Agent Urbanski paid Magnuson $750.00 for the gun and methamphetamine. The gun was registered to Celona (N.T. at 122-24), initially tying Celona in on the sale, conspiracy and "enterprise."

Agent Urbanski volunteered to stay with the disabled Hyundai and to tell the police that he was driving it. The C.I. then drove Magnuson and Saxer to Celona's house. While Agent Urbanski was waiting with the disabled Hyundai, Celona appeared and began rummaging through the Hyundai. Celona said she was the renter of the Hyundai (N.T. at 62). Celona said she was the meth supplier for Magnuson (N.T. at 62). This information was elicited at trial with no objection. As a result, Celona's role and relationship with Magnuson and Saxer were further confirmed for purposes of proving conspiracy and enterprise.

After that contact, Celona developed a trust for Agent Urbanski and participated in telephone calls and other contacts with Agent Urbanski, furthering additional deliveries of illicit controlled substances. The Commonwealth played an audio recording of telephone calls between Agent Urbanski, Magnuson and Celona. (Exs. C-8 and C-9). The defense offered a hearsay objection to Ex. C-8 (the 1/27/21 phone call). The court permitted the recorded statements of Celona as statements of a co-conspirator of the Appellant made in furtherance of the conspiracy under Pa.R.E. 803(25)(E). The audio revealed the arrangement of further illicit sales of controlled substances between Agent Urbanski and others, arranged and agreed to by Celona, but to be carried out by others.

The objection was provisionally overruled: At that point in the trial, only Celona, Saxer and Magnuson had been tied to a conspiracy, with no mention of the Appellant. [The trial court] said that, if, later in the trial, the Appellant was not tied to the conspiracy, the objection would be sustained and "everything goes away at that point." (N.T. at 64-65). [As discussed, *infra*,] there was a strong tie proven between Celona and the Appellant.

More recorded calls involving Agent Urbanski, the C.I., Celona and Magnuson occurred on February 8, 2021 (Ex. C-9) during which a transaction involving methamphetamine and an AK-47 rifle was arranged (N.T. at 69). The seller was to be "Chad" in Nescopeck. Defense counsel objected on the basis of relevance (NT at 69), asserting that there was no tie to the Appellant. The objection was overruled, again on the same basis as the first objection, with the statements being in furtherance of the conspiracy. Celona arranged the meeting between Agent Urbanski and Chad by telling them Chad's address in a text message. (N.T. at 86). Chad showed Agent Urbanski the AK-47 in a guitar case (N.T. at 85), but the sale was not consummated. It was Agent Urbanski's suspicion that Chad thought Agent Urbanski was a cop (N.T. at 86). After that, Agent Urbanski was directed by Saxer to go to Celona's house to pick up methamphetamine (N.T. 88-89) at which Magnuson sold the C.I. methamphetamine from an Xterra vehicle that Agent Urbanski recognized as Celona's (N.T. at 89).

On March 16, 2021, another controlled purchase was arranged through Celona (N.T. at 95). Celona directed Agent Urbanski and the C.I. to "Charles" at Room 118 of the Candlewood Suites in Hazle Township (N.T. at 95). Pursuant to Celona's direction, Agent Urbanski and the CI drove to Room 118 of the Candlewood Suites and knocked on the door (N.T. at 101). Without anyone saying why they were there, and without the Appellant asking, Agent Urbanski gave the Appellant a digital scale, as had been requested by Celona, and the Appellant went to a false book, opened it, retrieved the crystal meth, weighed it, and delivered it to Agent Urbanski, and Agent Urbanski paid the Appellant $1,200.00 (N.T. at 101). The Appellant admitted to Agent Urbanski that he had made previous deliveries for Celona (N.T. at 103). The hotel room was full of packages of synthetic marijuana and packaging materials. (N.T. at 103).

After the Commonwealth rested, the defense moved for judgment of acquittal as to Count 1, Corrupt Organizations, and Count 2, Conspiracy. The denial of that motion is the subject of the first assignment of error.

Trial Court Opinion, 3/21/25, at 1-5.

Consistent with Appellant's Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal, the Brief of Appellant raises two issues for this Court's consideration:

1. Was the evidence insufficient to convict [Appellant] of corrupt organizations, 18 Pa.C.S.A. § 911(b)(3) because the Commonwealth failed to establish that [Appellant] engaged in a pattern of racketeering activity?

2. Did the trial court err by allowing the jury to learn about the criminal acts of alleged co-conspirators whose cases were not consolidated with the Appellant's which were irrelevant to any of the issues in the Appellant's case?

Brief of Appellant, at 4.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

In applying the above test, we may not [re]weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. James*, 297 A.3d 755, 764 (Pa. Super. 2023) (citations omitted and formatting altered).

Appellant contends, first, that the evidence was insufficient to convict him of the offense of Corrupt Organizations, 18 Pa.C.S.A. § 911(b)(3),[1] because the Commonwealth failed to prove he engaged in a "pattern of racketeering behavior" as proscribed under the statute. A "pattern of racketeering activity" means "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." 18 Pa.C.S.A. § 911(h)(4). *See Commonwealth v. Geddes-Kelly*, 307 A.3d 675 at **8 (Pa. Super. filed Oct. 20, 2023) (non-precedential decision).[2] Pursuant to Section 911(h)(1)(ii) and (iii), "Racketeering activity" means, "(ii) an offense indictable under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act (relating to the sale and dispensing of narcotic drugs)" and "(iii)

---

[1] The crime of Corrupt Organizations prohibits, *inter alia*:

**(b) Prohibited activities.—**

**. . .**

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 Pa.C.S.A. § 911(b)(3).

[2] *See* Pa.R.A.P. 126(b) (authorizing citation for persuasive value to nonprecedential decisions filed after May 1, 2019).

A conspiracy to commit any of the offenses set forth in subparagraph (i), (ii) and (v)."

Appellant argues that witness testimony describing his single crystal methamphetamine delivery at the behest of Ms. Celona established only that he did what every person who completes an illicit drug sale does, namely, acquire illicit drugs from a supplier and sell them to a buyer. Therefore, the Commonwealth's proof did not come within the ambit of the Corrupt Organizations statute, which by its terms is intended to capture larger scale suppliers who engage in a pattern of behavior different from his, he posits. Brief of Appellant at 8. *See* N.T. at 96-101.

The Commonwealth responds that evidence supported Appellant's conviction for Corrupt Organizations by establishing he carried out his pivotal part in the Celona-run group enterprise of selling controlled substances from his motel room. Adopting the trial court's findings of fact and rationale, the Commonwealth asserts,

> there was a very distinct tie between Celona[,] and her professed business as a supplier of methamphetamine[,] and Appellant: Celona directed Agent Urbanski to Room 118 to buy meth[amphetamine] from 'Charles' [Appellant]; [Appellant] answered the door, and with no questions asked, [Appellant] retrieved methamphetamine, weighed it out and sold it directly to Agent Urbanski. This not only permitted a strong inference of a conspiracy, but also proof that [Appellant] was part of Celona's 'enterprise' of selling controlled substances."

Brief for Appellee, at 7 (quoting Trial Court Opinion, 3/21/25, at 5).

Viewing the totality of evidence in a light most favorable to the Commonwealth as verdict winner, we find that Appellant's argument casting his sale of crystal methamphetamine to Agent Urbanski and the CI as a single, isolated transaction distinct from Celona's larger operation is belied by the totality of relevant and probative evidence establishing he was among the actors involved in the Celona-orchestrated conspiracy to sell contraband and controlled substances. The notes of testimony include Agent Urbanski's description of how, on March 16, 2021, Celona put him and the C.I. in contact with her "associate Charles," meaning Appellant, after they called Celona asking to buy two ounces of methamphetamine. N.T. at 94-95, 98-99. She stated to the men that she would call "Charles" so that they could meet him and buy the drugs. N.T. at 99.

As Celona said it would occur, Appellant received Agent Urbanski and the C.I. in his motel room in routine fashion and without question. N.T. 98-101. Appellant discussed neither quantity nor price but simply accepted as reliable the digital scale from Agent Urbanski, accessed crystal methamphetamine from a safe within a "false book," weighed approximately two ounces of the narcotic for sale, and returned to the safe what Agent Urbanski estimated in his training, knowledge, and experience to be four ounces. N.T. at 101. Agent Urbanski paid $1,200.00 in pre-recorded money for the two ounces, and Appellant accepted it as a predetermined amount of cash. N.T. at 101. During the encounter, moreover, Appellant "talk[ed] about

previous deliveries that he had made *for Celona*." N.T. at 103 (emphasis added).

It was the Commonwealth's theory at trial that the routine, unquestioning manner in which Appellant carried out the drug transaction arranged by Celona and Agent Urbanski, coupled with both Celona's reference to Appellant as her "associate" and Appellant's reassurance offered to the agent and C.I. that he completed deliveries for Celona, established Appellant's conspiratorial role within the Celona-run corrupt organization and distinguished his actions from those of an independent drug dealer merely selling his own product. Both his acts and words during the sale, as recounted by Agent Urbanski on the witness stand, supported Celona's pre-sale description of him as an associate working within her organization. The illicit deal had already been arranged by her in the ordinary course, and he was to collect the money and deliver the crystal methamphetamine pursuant to the conspirators' customary practice.

The totality of such evidence adduced at trial laid out a pattern of racketeering activity in which Appellant conspired to collaborate within the Celona-run enterprise, as he often did, by first agreeing to deliver methamphetamine to Celona's customers and then completing the delivery as agreed. As the Commonwealth thus established Appellant's criminal course of conduct as required under Section 911(h)(4), we discern no merit to Appellant's first issue.

Appellant's second issue pertains to the trial court's evidentiary ruling denying the defense motion to exclude Commonwealth evidence that Agent Urbanski and the C.I. made two firearms and methamphetamine controlled purchases in their January and February of 2021 dealings with Celona and other associates. Because Appellant was not directly involved in those controlled purchases, defense counsel argued the evidence was "not probative to anything" in Appellant's case and therefore "more prejudicial than probative." N.T. at 48.

The trial court ruled that evidence of the other alleged controlled purchases, which preceded Appellant's March of 2021 collaboration with Celona to deliver methamphetamine to the agent and C.I., was relevant and probative to the question of whether a Celona-led corrupt organization conspiring to sell methamphetamine and guns existed at the time of Appellant's conduct in question. N.T. at 49. Such evidence should have been ruled inadmissible, Appellant argues, without evidence that Appellant knew of or participated in the other controlled purchases. We disagree.

Our standard of review of a challenge to the admission of evidence acknowledges that "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Koch**, 39 A.3d 996, 1002 (Pa. Super. 2011) (citations omitted). An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either

- 10 -

manifestly unreasonable or the product of partiality, prejudice, bias, or ill will.
*See Commonwealth v. Spiewak*, 617 A.2d 696, 699 n.4 (Pa. 1992).

Admissibility of evidence depends on its relevance and probative value.
*Koch*, *supra*.

> Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401. Evidence is excluded if its probative value is outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. This Court has explained that "all relevant Commonwealth evidence is meant to prejudice a defendant[,]" thus "exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 n.6 (Pa. Super. 2015) (cleaned up).

*Commonwealth v. Kline*, --- A.3d ---, 2025 WL 2553334 (Pa. Super. filed Sept. 5, 2025). *See also Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa. Super. 2023) (observing probative value must outweigh prejudicial effect, but emphasizing, "[t]he trial court is not required to sanitize the trial to eliminate all unpleasant facts . . . where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.")

The contested evidence was central to the charge of Corrupt Organizations and the issue arising thereunder of whether a methamphetamine distribution enterprise orchestrated by Celona existed. The jury heard that just as Celona had provided Agent Urbanski and the C.I.

with access to her firearms and methamphetamine through associates in January and February of 2021, so, too, did she readily turn to another associate, Appellant, when the agent and C.I. sought more methamphetamine in March of 2021.

The evidence showing Celona's oversight and coordination of racketeering activity comprising multiple sellers of her contraband and narcotics was both relevant and highly probative to the questions of whether a corrupt organization of conspirators existed and whether Appellant delivered methamphetamine in collaboration with Celona as part of this organization or, as the defense asserted, merely as an accommodation to Celona on this occasion. Therefore, the trial court committed no error in its evidentiary ruling that the probative value of evidence offered to establish the existence of Celona's organization of conspirators and its prior dealings with the Agent and C.I. outweighed any unfair prejudice or potential confusion attendant to the evidence.

Judgment of sentence is Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/19/2025