J. S55016/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| JOEL BROUGHTON | : | |
| | : | |
| Appellant | : | No. 2496 EDA 2015 |

Appeal from the Judgment of Sentence July 7, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000860-2014

BEFORE: LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.: **FILED OCTOBER 19, 2016**

Appellant, Joel Broughton, appeals from the Judgment of Sentence entered on July 7, 2015, in the Court of Common Pleas of Chester County, following his convictions for Simple Assault, Recklessly Endangering Another Person, and Unlawful Restraint.[1] We affirm.

The trial court set forth the relevant factual history as follows:

Kyle Freeman and his ex-wife have two children together. [Appellant] is currently married to Mr. Freeman's ex-wife and is the step-father of the children. On February 4, 2014, after Mr. Freeman dropped the kids off at the residence their mother shared with [Appellant], an argument about ongoing custody issues ensued between Mr. Freeman and [Appellant]. After several minutes, Mr. Freeman turned to walk away and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1); 18 Pa.C.S. § 2705; and 18 Pa.C.S. § 2902(a)(1), respectively.

[Appellant] sucker-punched him from behind. Mr. Freeman fell to the ground but then got up. [Appellant] then brought him back down to the ground, sat on top of him and held him there for the next two and a half to three hours. During this time, [Appellant] had Mr. Freeman in a chokehold and repeatedly punched him in the back of the head. Mr. Freeman feared for his life and repeatedly begged [Appellant] to let him go.

[Appellant] did not say a single word to Mr. Freeman the entire time he held him down. It was very cold outside during the incident and there was two to three inches of snow on the ground. When trying to get Mr. Freeman to the ground, [Appellant] pulled off Mr. Freeman's coat so he was not wearing it the entire time [Appellant] forcibly kept him on the ground in the snow. While he was being held, Mr. Freeman vomited at least one time. He also believes he lost consciousness at times during the ordeal. [Appellant] only permitted Mr. Freeman to get up after he agreed to have the police called and to tell them there had been a fight between them entered into by mutual consent.

When [Appellant] finally permitted Mr. Freeman to get up, he could not walk unassisted. He had to be helped into the garage where they waited for the police. He told the police officer that he just wanted to leave, and the officer had to help him to his car. After he left [Appellant]'s residence, he talked with his father and his girlfriend about what he should do. They both encouraged him to go to the police station and to tell them what happened. After he left the police station, he went to the hospital. He was experiencing profuse pain from his head to his calves and all of his extremities were extremely weak. He also had abrasions and tenderness on the back of his head. His Creatine Kinase Level (hereinafter "CK") was over 12,000, which indicates significant muscle damage. It was also ten times higher than the level required for admission to the hospital. He was diagnosed with rhabdomyolysis, which can lead to kidney failure and death if left untreated. He also had a concussion.

Trial Court Opinion, dated 12/10/15, at 1-2.

On April 30, 2015, a jury found Appellant guilty of Simple Assault, Recklessly Endangering Another Person, and Unlawful Restraint.[2]  On July 7, 2015, the trial court sentenced Appellant to a term of four days' to 23 months' incarceration followed by three years of probation.

Appellant timely appealed.[3]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises this sole issue on appeal:  "Did the trial court err by allowing the Commonwealth to introduce irrelevant evidence that had nothing to do with the offenses [Appellant] was charged with?"  Appellant's Brief at 4.  Specifically, Appellant avers that the trial court improperly permitted cross-examination regarding Appellant's offer to adopt Mr. Freeman's children, Appellant's step-children, six months after the incident giving rise to the charges.  Appellant's Brief at 10-11.

Our Supreme Court has stated that the trial court:  "has considerable discretion in determining the scope and limits of cross-examination, and this Court cannot reverse absent a clear abuse of discretion or error of law."  *Commonwealth v. Boxley*, 838 A.2d 608, 615 (Pa. 2003).  When a trial

---

[2] The jury found Appellant not guilty of Aggravated Assault pursuant to 18 Pa.C.S. § 2702(a)(1).

[3] On October 10, 2015, this Court issued a Rule to Show Cause why this appeal should not be quashed as untimely filed on August 7, 2015 from the Judgment of Sentence imposed on July 7, 2015.  In response, Appellant provided a United States Postal Service tracking slip indicating that the Notice of Appeal was received by the "COURT HOUSE" in West Chester, P.A. at 9:07 A.M. on August 6, 2015, rendering it timely.

court indicates the reason for its decision to admit testimony, "our scope of review is limited to an examination of the stated reason." *Commonealth v. Minerd*, 753 A.2d 225, 229 (Pa. 2000).

Cross-examination "should be limited to the subject matter of the direct examination and matters affecting credibility, however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Pa.R.E. 611(b). It is well established that "[o]ne who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase 'opening the door' . . . by cross examination involves a waiver." *Commonwealth v. Harris*, 884 A.2d 920, 928 (Pa. Super. 2005) (quoting *Commonwealth v. Stakley*, 365 A.2d 1298, 1299-1300 (Pa. Super. 1976)). Simply put, "[i]f a defendant delves into what would have been objectionable testimony on the Commonwealth's part, then the Commonwealth can probe into this objectionable area." *Commonwealth v. Patosky*, 656 A.2d 499, 504 (Pa. Super. 1995).

Here, the trial court opined:

> [Appellant] testified on his own behalf at the trial of this matter. During his direct examination, he testified that he was not trying to replace Mr. Freeman as the children's father. On cross-examination, the Commonwealth wanted to impeach this testimony by questioning [Appellant] about an offer that was made for [Appellant] to adopt the children. After [Appellant's objection and] discussing the issue at side-bar with both attorneys, the testimony was permitted. The trial judge allowed

a brief inquiry into the subject but he first gave a cautionary instruction to the jury explaining the limited purpose for admitting the evidence. Specifically, he explained:

> Ladies and gentlemen, as you know, this is a case that has some overlap between the alleged assault and the child custody disputes that are underneath it all. What I want -- I'll allow some questioning about some of those matters to go to the intent that [Appellant] had at the time of the alleged assault. I'm not getting into the details of who's right in the child custody case, who is the better dad or any of that stuff. The only reason some limited cross-examination in the area is allowed is simply to go to [Appellant]'s intent at the time of the alleged assault.

> Since [Appellant] opened the door to this line of questioning during direct examination, the court properly allowed the Commonwealth to question him about whether he ever offered to adopt the children. Further, the court's cautionary instruction clearly informed the jury of the limited purpose for allowing this testimony to be introduced.

Trial Ct. Op. at 3-4 (internal citations omitted). We agree and, therefore, find no abuse of discretion.

Appellant argues that the evidence was irrelevant and introduced solely to bolster the Commonwealth's theory that Appellant was an "unlikeable person." Appellant's Brief at 9. However, once Appellant testified on direct examination that he was not trying to replace [Mr. Freeman] as the children's father, Appellant "opened the door" to questions regarding that topic on cross-examination, regardless of whether it was relevant. *See Harris, supra*. Further, the trial court judge offered a curative instruction telling the jury to consider the testimony for the

purposes of intent at the time of the alleged assault and the "law presumes that the jury follows the court's instructions." ***Minerd, supra*** at 232. Accordingly, we conclude the trial court did not abuse its discretion or commit an error of law in permitting the challenged cross-examination.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2016