J-S45012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREEM GREEN | : | |
| | : | |
| Appellant | : | No. 698 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 2, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0000101-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREEM GREEN | : | |
| | : | |
| Appellant | : | No. 699 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 2, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0000103-2021

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 14, 2023**

Appellant, Kareem Green, appeals from the judgment of sentence entered on December 2, 2021, as made final by the denial of Appellant's post-sentence motion on February 14, 2022.  We affirm.

The trial court thoroughly summarized the underlying facts of this case:

[The Commonwealth charged Appellant with committing escape, aggravated and simple assault against T.J., and

aggravated and simple assault against J.U.[1] During the ensuing jury trial, the Commonwealth demonstrated that Appellant] repeatedly stabbed [T.J.], who was the mother of his children, as she walked on Seventh Street in the City of Allentown. He initially punched her in the face, and then stabbed her. He also stabbed [J.U.].

[Appellant], at the time of the attack, had failed to return to the Lehigh County Community Corrections Center (hereinafter work release), where he was serving simple assault sentences for previously attacking [T.J. Appellant] was permitted to go to the hospital because he was complaining of chest pains, but instead[] tracked[] down [T.J.] and stabbed her. He was not apprehended until almost six (6) months after his escape.

. . .

[Prior to trial, the Commonwealth filed a motion *in limine,* where it sought permission to introduce the following evidence of Appellant's prior bad acts at trial: 1) evidence that, on August 5, 2018, Appellant pleaded guilty to two counts of simple assault against T.J. and 2) evidence that, in January 2020, Appellant violated a no-contact order and his work release by entering T.J.'s apartment through a third-floor window and "confront[ing] her as to whether she was dating anyone." Commonwealth's Motion *in Limine*, 8/3/21, at 1-3. Appellant did not file a written response to the Commonwealth's motion. Further, although the trial court held a hearing on the motion, Appellant did not include a transcript of the hearing in the certified record. On September 15, 2021, the trial court granted the Commonwealth's motion *in limine*. Trial Court Order, 9/15/21, at 1.]

[During trial, the Commonwealth introduced the following evidence.]

On January 26, 2020, after midnight, [T.J.] and [J.U.] were returning to [T.J.'s] apartment after visiting a nearby

_____

[1] 18 Pa.C.S.A. §§ 5121(a), 2702(a)(1), and 2701(a)(1), respectively.

7-Eleven when [A]ppellant ran towards them. [A]ppellant and [J.U.] squared off. [A]ppellant stabbed [J.U.], who then ran away, and [A]ppellant turned his attention to [T.J.].

He punched [T.J.], called her a "dumb bitch," and then stabbed her in her stomach and collar. Doctor Rovinder Sandhu, a general trauma surgeon and surgical critical care doctor, treated [T.J.]. She had two stab wounds in her right arm, and one stab wound to the right side of her belly. [T.J.] was considered Code Omega, which meant upon her arrival at the hospital, she went directly to the operating room. The right side of [T.J.'s] colon was removed, "basically the part that includes the appendix to the right side. You basically remove about a foot of the right colon." He described the penetration of the knife as "quite deep." Without being treated quickly, her injuries were life threatening.

[T.J.] remained at the hospital for "less than three weeks," and upon release, suffered some complications from the stabbing. Photographs of her injuries were introduced into evidence.

The identification of [A]ppellant as the person who stabbed [T.J.] was confirmed by her testimony. Additionally, surveillance videos were introduced into evidence which confirmed the attack. [T.J.'s] testimony was also corroborated with still images from the video, which she explained showed [A]ppellant stabbing her.

At the time of the incident, by happenstance, Evelyn Mota was seated in her car waiting to pick up her kids when the stabbing unfolded in front of her. [She testified that she] "could see everything." [As she testified, s]he observed a person running towards two people and "surprised them. He just came out of nowhere and started stabbing the guy, and the guy ran away. He ran away and left the girl there. She was saying no, trying to get in front of him to stop with the other guy. And that's when he ran away, and he started stabbing her." Ms. Mota then called 9-1-1.

Officer Christopher Matthews, in the aftermath of the stabbings, responded to St. Luke's hospital to follow[] up on a report of a walk-in stabbing victim. [J.U.], who did not testify at trial, was observed by Officer Matthews with a

laceration across his right eye. By stipulation, [J.U.'s] medical records were introduced and disclosed that he also sustained a "fracture of his medial orbital wall, right side, closed fracture," which required surgery.

On the day after the stabbing, Detective Cherie Lebert secured an arrest warrant for [A]ppellant. It was not served that day because [A]ppellant fled to Florida. He was not arrested until July 16, 2020, a little less than six [] months after the stabbing. Detective Lebert received information that [A]ppellant had returned to the local area, and after Detective Lebert and another detective set up surveillance, [A]ppellant was taken into custody as he exited a family member's residence.

[A]ppellant testified and conceded he failed to return to the work release quarters, but instead went to his brother's residence and drove off with his Chevrolet Impala. He then drove to the location where [T.J.] lived[] and saw her walking on the street. He also saw [J.U.], and the two of them began "clutching." He claimed to have seen [J.U.] reaching toward his waist[] and observed a "handle." The two, in [A]ppellant's words, then began "tussling." [A]ppellant claimed that [J.U.] cut him, and in return, [A]ppellant claimed that he "bit" [J.U.] in the face. Appellant's version of events was that he then pulled out a knife from his pocket and "just started swinging," striking [J.U.]. He then felt somebody coming up from his left side, and again started swinging the knife. He never admitted that he stabbed [T.J.], but admitted that he saw her lying on the ground. He did not render aid, did not call 9-1-1, nor did he do anything to assist [T.J.]. Instead, he went to Florida — because he knew he "ran from work release . . . and stabbed two people." The stabbing of [T.J.], from [A]ppellant's perspective, was an accident, and the stabbing of [J.U.] was self-defense.

Trial Court Opinion, 6/7/22, at 3-6 (citations and footnotes omitted).

The jury found Appellant guilty of all charged crimes and, on December 2, 2021, the trial court sentenced Appellant to serve an aggregate term of 13 ½ to 27 years in prison for his convictions. Following the denial of

Appellant's post-trial motion, Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> Did the trial court err in permitting the testimony regarding [Appellant's] history of domestic abuse or convictions for domestic [violence] based on the likely prejudicial effect occurring in the prosecution of [Appellant] for a new assault on [T.J.]?

Appellant's Brief at 4.

Here, the Commonwealth filed a motion *in limine*, where it sought to introduce evidence of Appellant's prior bad acts against T.J. As noted above, Appellant did not file a written response to the Commonwealth's motion *in limine* and, on appeal, Appellant did not include a transcript of the hearing on the Commonwealth's motion. Thus, we have no way of determining whether, or upon what grounds, Appellant objected to the admission of the contested evidence. Appellant's claim on appeal is, therefore, waived. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Minerd*, 753 A.2d 225, 229 (Pa. 2000) ("an appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion . . . [and] our scope of review is limited to an examination of the stated reason"); *Commonwealth v. Gillen*, 798 A.2d 225, 229 (Pa. Super. 2002) (holding that it is an appellant's responsibility to order all transcripts necessary for review and that a failure to do so constitutes waiver of the issue).

In the alternative, we conclude that, even if Appellant had not waived the claim on appeal, Appellant's claim fails on the merits.

"We review an evidentiary ruling for an abuse of discretion." *Commonwealth v. Yale*, 249 A.3d 1001, 1007 (Pa. 2021). As our Supreme Court has explained:

> the term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the trial judge. An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* at 1007-1008 (citations, corrections, and some quotation marks omitted).

Pennsylvania Rule of Evidence 404(b), pertaining to prior bad acts evidence, provides, in pertinent part:

> **(b) Other Crimes, Wrongs, or Acts.**
>
> (1) *Prohibited Uses*. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> (3) *Notice in a Criminal Case*. In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair

> opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

This Court has explained:

> Evidence of a defendant's distinct crimes are not **generally** admissible against a defendant solely to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not **generally** proof of the commission of another. However, this general proscription against admission of a defendant's distinct bad acts is subject to numerous exceptions if the evidence is relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character.
>
> Exceptions that have been recognized as legitimate bases for admitting evidence of a defendant's distinct crimes include, but are not limited to:
>
> > (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design such that proof of one crime naturally tends to prove the others; (5) to establish the identity of the accused where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception).
>
> Additional exceptions are recognized when the probative value of the evidence outweighs the potential prejudice to the trier of fact.

- 7 -

*Commonwealth v. Yocolano*, 169 A.3d 47, 54-55 (Pa. Super. 2017) (some citations and quotation marks omitted) (emphasis in original).

On appeal, Appellant claims that the trial court erred when it admitted evidence of his prior bad acts toward T.J., as the evidence was "highly prejudicial and contradicted the defense presented that the harm to her was done accidentally rather than intentionally." Appellant's Brief at 10. This claim fails. To be sure, Appellant's entire claim on appeal is that the evidence of his prior bad acts toward T.J. was too prejudicial, as the evidence undercut his defense "that the harm to her was done accidentally rather than intentionally." *Id.* However, as Rule 404(b)(2) makes clear, a permissible use of prior bad act evidence is to prove "absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Therefore, evidence that Appellant committed simple assault against T.J. and then violated a no-contact order and his work release by entering T.J.'s apartment through a third-floor window and "confront[ing] her as to whether she was dating anyone" was indeed admissible to prove that, on January 26, 2020, Appellant did not "accidentally" stab T.J. *See* Pa.R.E. 404(b)(2). Appellant's claim on appeal thus immediately fails.

Further, we note that the case at bar is similar to *Commonwealth v. Sherwood*, 982 A.2d 483 (Pa. 2009). In *Sherwood*, the defendant was charged with first-degree murder for the beating death of his four-year-old stepdaughter. *Id.* at 486. The Commonwealth offered into evidence prior instances in which the defendant beat the victim. *Id.* at 497. Our Supreme

Court held that such evidence was properly admitted under Rule 404(b). ***Id.*** at 497. Specifically, our Supreme Court held that prior bad acts evidence is admissible when the bad acts were critical to understanding the history of events related to the crime. ***Id.*** Applying that rule, our Supreme Court held that the prior beatings were critical to understanding that the killing of the victim was not an accident or mistake and that the defendant possessed the requisite *mens rea* for first-degree murder. ***See id.***

The same is true in the case at bar. Appellant assaulted T.J. in 2018 and then, shortly before he committed the crime at issue, Appellant violated a no-contact order and his work release by sneaking into T.J.'s apartment and "confront[ing] her as to whether she was dating anyone." As explained above, this evidence is admissible to prove that Appellant did not "accidentally" stab T.J. on January 26, 2020. Moreover, the evidence is admissible to explain the history of events related to this crime and Appellant's jealous motive for attacking T.J. and J.U. on the date in question. Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/2023