J-S05026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CORY HEGELEIN | : | |
| | : | |
| Appellant | : | No. 768 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 18, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005395-2023

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED MAY 28, 2026**

Appellant, Cory Hegelein, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury trial convictions for rape of a child, statutory sexual assault, unlawful contact with a minor, aggravated indecent assault, indecent assault, and corruption of minors.[1] We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> Appellant, who began a romantic relationship with [Victim's] mother [("Mother")] in late 2017, subsequently moved in with her and her three children, including [Victim], in 2018. They resided together in various apartments between the years of 2018 and 2020. While living together, [Mother]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c), 3122.1, 6318, 3125, 3126, and 6301, respectively.

usually worked the overnight shift at Walmart, from 10:00 pm until 7:00 am, five nights a week, from early 2020 until March 2023.

While [Mother] was working, Appellant assumed responsibility for the care of the three children. The three children included a young daughter, whose biological parents are Appellant and [Mother], along with [Victim] and their older brother, … whose biological parents are [Mother] and [her ex-husband]. Despite ending their relationship in May or June of 2022, Appellant, [Mother] and the three children continued to live together until November 2022. During this time, Appellant continued to care for the children while [Mother] was at work.

On or around November 16, 2022, [Mother's ex-husband] was informed by his son … that [Victim] had disclosed to him that Appellant had been sexually abusing and assaulting her. A child advocate from Child Protective Services was notified that day. On November 18, 2022, [Victim] was interviewed at the Bucks County Child Advocacy Center by [an] experienced forensic interviewer.

After witnessing the forensic interview, Detective Ronald MacPherson of the Falls Township Police Department … immediately obtained a search warrant for Appellant's apartment. Detective MacPherson and Detective Sergeant Michael Callahan … executed the search warrant for Appellant's residence on November 18, 2022. The police provided [Mother] with [Victim's] witness statement …, and they conducted a contemporaneous interview of Appellant in his apartment.

During her forensic interview and her testimony at trial, [Victim] described multiple incidents of Appellant's sexual abuse of her. [Victim], 12 years of age at the time of trial and a 6th grade student, testified that Appellant would touch her chest and genitals with his hand. Appellant would penetrate her vagina with his penis and had done so more than ten times.

(Trial Court Opinion, filed 7/8/25, at 2-4) (internal footnotes and record citations omitted).

Following their investigation, the police arrested Appellant in September 2023. On December 20, 2023, Appellant filed a request for pretrial discovery, pursuant to Pa.R.Crim.P. 573. Appellant filed omnibus pretrial motions on April 26, 2024. Appellant's filing included a motion *in limine* to exclude any opinions offered by the Commonwealth's experts. Appellant explained that the Commonwealth notified Appellant of its intent to call five expert witnesses. Among those witnesses was Rachel McCormick, a nurse practitioner who the Commonwealth would offer as an expert in the field of child abuse pediatrics. Appellant complained that the Commonwealth had "not informed [Appellant] of which opinions will be offered by its five proposed expert witnesses[.]" (Omnibus Pretrial Motions, filed 4/26/24, at ¶20). Without this information, Appellant claimed that he was "unable to effectively prepare for trial, cross examination, and any potential objections … to these experts' testimony." (*Id.* at ¶22).

The Commonwealth filed a response on May 3, 2024. The Commonwealth emphasized that it notified Appellant regarding its experts on April 23, 2024. Regarding Ms. McCormick, the Commonwealth added:

> 5. Within the discovery were the medical examination records of the child victim in this matter. These records detail the examination conducted … by Rachel McCormick, CRNP, on November 30, 2022, at St. Christopher's Pediatric Associates Child Protection in Yardley, PA.
>
> 6. Defense counsel previously indicated the possibility of presenting expert testimony that the lack of physical injuries to the child victim is evidence to dispute the charges for which [Appellant] faces.

7. The Commonwealth avers that Ms. McCormick would render a contradictory opinion should the defense seek to pursue that defense. As stated in the medical records, "a normal anogenital exam neither excludes nor confirms sexual abuse or prior penetration."

(Response to Omnibus Pretrial Motion, filed 5/3/24, at 4-5).

On June 7, 2024, the court conducted a hearing on Appellant's omnibus pretrial motions. Regarding Appellant's motion *in limine* to exclude the opinions from the Commonwealth's experts, defense counsel initially conceded: "At the time I filed the motion, I hadn't received a lot of supplemental discovery that I have received." (N.T. Hearing, 6/7/24, at 6). Defense counsel, however, continued to object to some of the proposed testimony from Ms. McCormick:

We received medical records in this case regarding the complainant's treatment at St. Christopher's Hospital on November 30th of 2022. Ms. McCormick … was the medical professional who completed an evaluation of the complainant, and we understand that … Ms. McCormick would opine to two conclusions: The first being that no injuries were observed during the anogenital exam of the complainant. And the second conclusion that is listed in the medical records that we believe Ms. McCormick would testify to is that this is not inconsistent with her account to other people, including law enforcement, regarding the allegations in this case.

Our position in regard to those two … proposed expert conclusions is that we do not, first, object to Ms. McCormick being tendered as an expert in the field of … pediatric child abuse. I believe that is the tendered field. But second of all, we would not object to either of those two expert opinions.

However, we were made aware today that there is a … third

- 4 -

piece of testimony she would offer at trial that we would consider an opinion, that we were not made aware of either in speaking with [the prosecutor] or in the discovery provided to the defense, and that specifically is that **she would testify that in 90 to 95 percent of either allegations of child sexual abuse or in documented cases of child sexual abuse, there would be no noticeable observable injuries.**

That allegation or conclusion was not in the medical records provided to the defense, nor was that made [available] to us in any kind of filings by the Commonwealth. And we were made aware of that today, I'll estimate, around 12:30 p.m. or so.

(*Id.* at 9-10) (emphasis added). Defense counsel added that such testimony was objectionable on "due process procedural grounds because we were unaware of that potential testimony, which would essentially form the … data for her other conclusions." (*Id.* at 10-11).

In response, the prosecutor indicated that he had met with Ms. McCormick the day before. At that time, Ms. McCormick explained "that it is overwhelmingly common, and specifically said in about 90 to 95 percent of the time, where there is reported sexual abuse with a child that there is no injury." (*Id.* at 12). The prosecutor immediately advised defense counsel about Ms. McCormick's statement. The prosecutor, however, did not view Ms. McCormick's statement as an opinion: "I think it's her explaining why she is giving the preceding opinion." (*Id.*) The prosecutor added:

The medical report that she issued was provided in the initial discovery, which was sent back on January 11th 2024. In that discovery is the medical record where she essentially is stating that the lack of injury is not inconsistent with [Victim's] report of what occurred.

- 5 -

(*Id.* at 12-13).

At the conclusion of the hearing, the court determined that, *inter alia*, the prosecutor should make Ms. McCormick available to defense counsel prior to trial:

> So the defense obviously cannot claim surprise about the opinion. Then the next issue is whether or not this 90 to 95 percent supporting her conclusion is a foundational fact or … an opinion. And my judgment is it's a foundational fact in support of the opinion that the lack of injury in that area is not inconsistent with the report of child sexual abuse. So I think the standard is somewhat relaxed then in terms of the admissibility.
>
> But having said that, I think it's a good idea and I think it's a fair idea for [the prosecutor] to provide access to the expert, Ms. McCormick, to the defense, which you're doing presently. And I understand she may testify on this coming Wednesday, which is, what, five days hence.

(*Id.* at 13-14).

The parties revisited this topic at another hearing on June 10, 2024, the day before trial commenced. Defense counsel started by recounting his telephone conversation with Ms. McCormick after the prior hearing.

> In approximately ten or so minutes where we asked her questions regarding how she came up with that study of 90 to 95 percent of the cases of sexual abuse with not having injuries, she answered our questions and indicated she would send the study that, essentially, she saw that first statistic offered in, and send that to us for review.

(N.T. Hearing, 6/10/24, at 7). Although the prosecutor subsequently provided the study, defense counsel still found the proposed testimony to be objectionable:

- 6 -

> Our concern regarding this testimony and regarding the study that the Commonwealth provided is that it is unclear whether or not the factual allegations in that study are sufficiently similar enough to those in this case that would provide any help to the trier of fact; and would allow, what we believe is, opinion testimony … to be admissible.

(*Id.* at 9). Defense counsel concluded that the "last-minute nature" of the "reveal" of Ms. McCormick's testimony left him unable to plan an effective trial strategy. (*Id.* at 11). Thus, defense counsel requested that the court exclude the evidence or, in the alternative, grant a continuance. (*See id.* at 12).

The court found that "the 90 to 95 percent statement … is potentially very, very strong and supportive of the expert's opinion. But I think it should only be permissible in the right context." (*Id.* at 27-28). Thus, the court ordered Ms. McCormick to appear for an *in camera* hearing where the prosecutor "can try to establish what is a supportive factual record allowing that 90 to 95 statement in as one of the bases of her opinion about a negative physical exam." (*Id.* at 28). Because it provided an *in camera* hearing, the court denied Appellant's continuance request.

The next day, the parties appeared for the *in camera* hearing. On direct examination, Ms. McCormick explained that she conducted a physical examination of Victim, the examination was "normal," and "[i]t is more common for a child to have a normal anogenital exam with the disclosure of sexual abuse than it is to have an actual physical finding that we can see on their body." (Hearing, 6/11/24, at 13). Ms. McCormick also repeated the statistic that "90 to 95 percent of children will have a normal anogenital exam

when they made a disclosure of sexual abuse or come for an evaluation for sexual abuse." (*Id.* at 14). Later, the Commonwealth admitted the academic articles to support Ms. McCormick's testimony. (*See* Exhibits CP-3, CP-4). At the conclusion of the hearing, the court found the Commonwealth's evidence persuasive:

> So I do think there is significant evidence here through Ms. McCormick's testimony and through these exhibits that support the 90 to 95 percent statement, which I believe is not an opinion, as we discussed several times on the record. But it is a statement based on literature and based on her own experience as a practitioner: The 90 to 95 percent of such exams, there will be no positive findings.
>
> So under all the circumstances, we are going to allow such a statement to be made at trial, without prejudice to the right of the defense to object again if something happens during the trial that changes the scenario that has been laid out here in pretty significant detail.

(*Id.* at 50-51).

That same day, trial commenced.[2] At the conclusion of the trial, the jury found Appellant guilty on all counts. On September 18, 2024, the court sentenced Appellant to an aggregate term of eighteen (18) to forty (40) years' imprisonment, followed by ten (10) years of probation. The court subsequently conducted a hearing to determine whether Appellant should be classified as a sexually violent predator. On February 14, 2025, the court

---

[2] Significantly, Appellant presented his own expert, Professor Kathleen Brown, who testified as an expert in the field of child sexual abuse. (*See* N.T. Trial, 6/13/24, at 144). Professor Brown opined that it was "very unlikely" for Victim to have suffered physical injuries in the instant case. (*Id.* at 149).

entered its order classifying Appellant as a sexually violent predator.

Appellant filed a timely notice of appeal on March 14, 2025. On March 21, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following an extension, Appellant timely filed his Rule 1925(b) statement on May 16, 2025.

Appellant now raises two issues for this Court's review:

> Did the trial court err in admitting the testimony of the Commonwealth's expert witness where Appellant was not provided notice of the basis for her expert testimony?

> Did the trial court err in denying Appellant's request for a continuance?

(Appellant's Brief at 9).

In his first issue, Appellant claims that he suffered a due process violation when the court permitted Ms. McCormick "to testify that no physical injury is observed in 90 to 95 percent of sexual assault cases." (Appellant's Brief at 13). Appellant acknowledges that the Commonwealth provided discovery materials, which included the medical records from Ms. McCormick's examination of Victim. Despite receiving these materials, Appellant insists that the medical records "failed to state the basis for Ms. McCormick's expert opinion." (*Id.* at 17). "Instead, Appellant was given notice of the key basis for that testimony only days before the trial." (*Id.*) On the eve of trial, Appellant maintains that defense counsel learned about the scientific studies relied upon by Ms. McCormick. Appellant argues that defense counsel "did not have the opportunity to attempt to find an expert to refute these studies,"

which effectively "resulted in trial by ambush." (*Id.*) Appellant concedes that he presented testimony from his own expert, Professor Brown. Nevertheless, "[t]he fact that Appellant presented his own expert cannot cure the late notice[.]" (*Id.* at 19). Appellant concludes that he did not receive the benefit of the essential elements of due process, and the court erred in permitting Ms. McCormick to present the trial testimony at issue. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court … and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference

- 10 -

or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal citation and quotation marks omitted).

While Appellant frames his issue as a challenge to the admissibility of Ms. McCormick's expert testimony, Appellant also asks this Court to engage in a due process inquiry.

A due process inquiry, in its most general form, entails an assessment as to whether the challenged proceeding or conduct offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental and that defines the community's sense of fair play and decency. While not capable of an exact definition, basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.

*Commonwealth v. Eldred*, 207 A.3d 404, 408 n.3 (Pa.Super. 2019) (quoting *Commonwealth v. Wright*, 599 Pa. 270, 293, 961 A.2d 119, 132 (2008)).

Appellant's complaints about Ms. McCormick's expert testimony implicate the rules of discovery. "The purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial." *Commonwealth v. Moose*, 529 Pa. 218, 236, 602 A.2d 1265, 1274 (1992). "Trial by ambush is contrary to the spirit and letter of those rules and cannot

be condoned." ***Id.***

Pennsylvania Rule of Criminal Procedure 573 provides for the mandatory, pretrial disclosure of expert reports and opinions:

**Rule 573.  Pretrial Discovery and Inspection**

\*     \*     \*

**(B)   Disclosure by the Commonwealth.**

(1)   *Mandatory.*  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\*     \*     \*

(e)   any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 573(B)(1)(e).

Rule 573 also gives the court discretion to order the disclosure of additional items:

(2)   *Discretionary With the Court.*

\*     \*     \*

(b)   If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating

the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and **the grounds for each opinion**.

Pa.R.Crim.P. 573(B)(2)(b) (emphasis added).

Instantly, the court determined that the Commonwealth did not violate Appellant's due process rights:

> [Appellant] had more than sufficient notice that the Commonwealth intended to call Ms. McCormick as an expert witness in child sexual abuse, and prior to trial, Appellant's counsel further understood the opinions she was going to offer at trial. Indeed, [Appellant's] counsel had every opportunity to and did, in fact, cross-examine Ms. McCormick at trial in an effort to challenge the reliability of her findings.
>
> It was and is obvious, then, that the five months [Appellant] had to investigate Ms. McCormick's opinions prior to trial was a sufficient period of time to find and retain an expert to challenge her opinions, and to challenge their foundations if it were deemed appropriate and feasible by the defense.
>
> The Pennsylvania Supreme Court has specifically sanctioned the admissibility of the opinion testimony offered by Ms. McCormick. *See Commonwealth v. Minerd*, 753 A.2d 225, 228-29 (Pa. 2000) (approving the admissibility of expert testimony explaining that the absence of physical trauma does not disprove abuse). Accordingly, Ms. McCormick was properly permitted to testify as to a physical exam of [Victim,] which revealed the absence of physical trauma, as neither supportive of nor contradictory to the child having experienced sexual assault.

(Trial Court Opinion at 12-13) (internal footnotes and record citations omitted). Our review of the record supports the court's conclusions.

Contrary to Appellant's assertions, this is not a case of trial by ambush. Pursuant to Rule 573(B)(1)(e), the Commonwealth was required to provide

Appellant with, *inter alia*, the proposed opinions from its experts and the reports from Victim's physical examination. At the June 7, 2024 pretrial hearing, defense counsel conceded that he had received Victim's medical records. (*See* N.T. Hearing, 6/7/24, at 9). Moreover, defense counsel indicated that he would not object to Ms. McCormick's proposed testimony that: 1) she did not observe physical injuries during Victim's anogenital exam; and 2) the lack of physical injuries was not inconsistent with Victim's account of sexual abuse. (*Id.*)

Instead, defense counsel complained that Ms. McCormick would offer "a third expert opinion" regarding the percentage of sexual abuse cases without observable injuries. (*Id.* at 10). Ultimately, the court correctly concluded that "the 90 to 95 percent statement" was not an opinion. (*See* N.T. Hearing, 6/11/24, at 51). Pursuant to Rule 573(B)(2)(b), the grounds for an expert's opinion are not subject to mandatory disclosure. Rather, the discovery of this material is discretionary with the court. Under the circumstances of this case, where the Commonwealth did not violate Rule 573, we are satisfied that there was no denial of Appellant's due process rights. *See Eldred, supra*.

We reiterate the court's finding that Appellant obtained Victim's medical records in January 2024, five months prior to trial. (*See* N.T. Hearing, 6/7/24, at 13). Thereafter, the Commonwealth's response to Appellant's omnibus pretrial motion explicitly confirmed Ms. McCormick's opinion that "[a] normal anogenital exam neither excludes nor confirms sexual abuse or prior

penetration." (Response to Omnibus Pretrial Motion at 4-5). While this information should have been enough for Appellant to prepare for trial, the court took the extra step of providing an *in camera* hearing for Appellant to gather more context about the expert's proposed opinion. Accordingly, we conclude that Appellant received adequate notice of the basis for Ms. McCormick's testimony, and the court did not err in admitting such testimony over Appellant's multiple objections. ***See Moose, supra***; ***Eldred, supra***; ***Belknap, supra***.

In his second issue, Appellant contends that the court should have granted his request for a continuance to prepare for Ms. McCormick's testimony. Again, Appellant emphasizes that his case involved "complex issues wherein the Commonwealth … provided late notice regarding the content of and basis for its expert's testimony." (Appellant's Brief at 24). Due to these complexities, Appellant insists the court should have granted a continuance where defense counsel "was unprepared to cross-examine the Commonwealth's witness and was still attempting to obtain his own expert witness." (***Id.*** at 25). Moreover, Appellant argues that the court's denial of a continuance resulted in prejudice because his chosen expert, Professor Brown, "actually agreed with the Commonwealth's expert making clear that Appellant did not have sufficient time to prepare." (***Id.***) Appellant concludes that the court committed reversible error in refusing to grant his continuance request. We disagree.

"[T]he grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." **Commonwealth v. Ross**, 57 A.3d 85, 91 (Pa.Super. 2012), *appeal denied*, 621 Pa. 657, 72 A.3d 603 (2013). "An abuse of discretion 'is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.'" **Id.** (quoting **Commonwealth v. Randolph**, 582 Pa. 576, 583, 873 A.2d 1277, 1281 (2005), *cert. denied*, 547 U.S. 1058, 126 S.Ct. 1659, 164 L.Ed.2d 402 (2006)).

Additionally, in the event of a discovery violation, Rule 573 provides for multiple remedies:

> **(E)   Remedy.**  If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

Instantly, we have already concluded that the Commonwealth did not commit discovery violations in conjunction with Ms. McCormick's proposed testimony.  Even if the Commonwealth had committed a violation, Rule 573(E) sets forth multiple remedies in lieu of a continuance.  One such remedy is to "order such party to permit discovery or inspection[.]" **Id.**  In an abundance

of caution, the court effectively utilized this remedy when it ordered the parties to appear for an *in camera*, pretrial hearing with Ms. McCormick. Based upon our review of the record, we cannot say that the court erred by opting for an *in camera* hearing instead of a continuance. **See Ross, supra**. Therefore, Appellant is not entitled to relief on his final issue, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/28/26